**Harry BRACE, Appellant,**

**v.**

**John Adam DANTE, Appellee.**

**No. 17590.**

Court of Civil Appeals of Texas, Dallas.

March 26, 1971.

Rehearing Denied April 30, 1971.

Charles W. Spencer, Geary, Brice, Barron & Stahl, Ronald L. Clower, Clower & Stanford, Dallas, for appellant.

Grover Hartt, Jr., Hartt & Perry, Inc., Dallas, for appellee.

BATEMAN, Justice.

This case involves a contest between the appellant Harry Brace and the appellee John Adam Dante as to which of them is entitled to a cashier's check for $5,000. Dante was given summary judgment, from which Brace appeals.

Both parties are engaged in the business of conducting health centers. Dante owned and operated two such places in Dallas which Brace desired to purchase. In 1968 the parties endeavored twice to agree upon such a sale, but on each occasion Brace withdrew from the negotiations. Under date of April 15, 1969 they entered into a "memorandum of understanding," by which Brace agreed to buy, and Dante agreed to sell, the two health centers for $49,500. The memorandum set forth certain terms and conditions, not necessary to repeat here, and provided for payment of the agreed purchase price when and if the attorneys for the contracting parties agreed and were satisfied that such terms and conditions had been met by Dante. Brace was represented by Attorney Joseph Alton Jenkins and Dante was represented by Attorney Grover Hartt, Jr. It was further

agreed that Brace would deliver to Jenkins a cashier's check payable to Dante for $5,000, which Jenkins would hold until such time as the two attorneys became satisfied that the intent of the contract had been carried out, at which time, "even if BRACE objects," Jenkins was instructed, directed and empowered to deliver the check to Dante, which "shall be in lieu of any damages for breach of contract by BRACE." The agreement closed with this final paragraph:

"This is intended to be an informal Memorandum of Understanding, but binding as a contract. The fulfillment of its terms and conditions depend upon the two attorneys agreeing that they have been fulfilled independent of any objection which may be voiced by either of the parties."

After execution of the said "memorandum," Hartt prepared the closing documents and after considerable discussion and negotiations, in the course of which Hartt satisfied all of Jenkins' objections thereto, the attorneys agreed that the terms and conditions of the "memorandum" had been met and that the sale was ready to close. However, Brace then refused to close and demanded that Jenkins return the cashier's check to him. Hartt threatened to sue Jenkins if he did so. Jenkins then filed this interpleader suit and asked the court to determine the rightful owner of the $5,000 check.

Jenkins moved for summary judgment discharging him from further liability. This was granted and there is no complaint thereof on this appeal.

Brace and Dante also filed motions for summary judgment. That of Brace was overruled and that of Dante granted. The trial court considered the affidavits of the parties attached to the three motions for summary judgment and the deposition of Brace. This summary judgment evidence establishes the foregoing facts without dispute.

Brace presents two points of error on appeal in which he contends that the trial court erred in giving Dante a summary judgment, and refusing to grant Brace's motion, because the evidence fails to show as a matter of law (1) that a contract was formed between the parties; (2) that such contract, if any, was enforceable; and (3) that the fund claimed by Dante and awarded to him by the judgment was liquidated damages rather than a penalty; but that the evidence showed, as a matter of law, the contrary in all three respects.

Brace argues that the "memorandum of understanding" was no more than an agreement to make a contract in the future. He cites numerous authorities holding in effect that an agreement to contract is invaid and unenforceable because there could be no way by which a court could determine just what contract the proposed negotiations would result in, or ascertain what damages might flow from a refusal to enter into such future contract. These authorities are unimpeachable and the rule announced therein well settled. However, they are inapplicable here, because in our opinion the "memorandum of understanding" was a valid and complete contract within itself. The provision for joint approval of the attorneys for the parties was not in any sense a contract to make a future contract, any more than would a construction contract which provided that the liability of the owner would depend upon approval by his architect after completion.

In Atlas Torpedo Co. v. United States Torpedo Co., 15 S.W.2d 150 (Tex.Civ.App., Amarillo 1929, no writ), the court had under consideration a contract which was complete within itself except that it was agreed that the sale provided for therein should not be consummated and the matter closed until the defendant's attorney was satisfied as to the legal aspects thereof. The jury found that the attorney was not so satisfied, and the court held that, such satisfaction being a condition precedent to

the formation of the contract, the contract was executory and not binding upon the defendant until the attorney was satisfied. The implication of the opinion is clear that if the attorney had been satisfied the contract would have been enforceable. See also Delhi Pipeline Corp. v. Lewis, Inc., 408 S.W.2d 295 (Tex.Civ.App., Corpus Christi 1966, no writ), and School Dist. of Kirksville v. Mississippi Valley Trust Co., 116 S.W.2d 146 (St. Louis Court of Appeals, Mo., 1938).

In his deposition Brace gave as his only reason for not closing the sale the fact that on the night before the date set for closing the sale he learned that a parking lot adjacent to one of the health centers had been leased to others, making it unavailable to the customers of the health center. He testified that Jenkins had represented him fairly throughout the transaction, that the matter had "checked out to the complete satisfaction of Mr. Jenkins," and to his, Brace's, satisfaction, except for the loss of the parking lot. It was shown without dispute that for some time Dante and the owners of two other businesses nearby had together rented the parking lot referred to by an oral agreement from month to month; they had no lease for any number of months or years. The availability of this or any other parking facility was not made a condition or other provision in the "memorandum of understanding," and was not even mentioned therein. Jenkins said in his affidavit that prior to the execution of the "memorandum of understanding" he asked Brace in substance whether or not it was understood that in the event of agreement between the two attorneys the check was to be delivered to Dante, and Brace indicated that it was so understood; that he also asked Brace about the month-to-month parking lot, and that Brace stated that he would "take my chances." Brace offered no evidence to the contrary.

It therefore appears without dispute that Brace agreed to close the purchase of these health centers if and when his own attorney approved the closing documents prepared by Dante's attorney, and that Brace's attorney did approve, thus satisfying the only condition precedent to Brace's liability under the contract.

■ Brace argues that the contract is not enforceable because it is illegal and contrary to public policy, in that it places him and his own attorney in opposing camps. We do not agree. The agreement in question is no more illegal or contrary to public policy than is the usual contract for the sale of land which makes the purchaser's liability contingent upon approval of marketable title by his own attorney.

■ Brace also argues that the maintaining and transfer of the month-to-month lease on the parking space was a condition precedent because of language in the "memorandum of understanding" wherein Dante agreed to arrange for the proper transfer to Brace of the "leases on the two properties." This provision obviously has reference only to the properties occupied by the two health centers and not to the parking area.

■ He also contends that his attorney could not have been "satisfied" as required by the agreement because he filed this bill of interpleader wherein he pleads that he is in reasonable doubt as to the rights of the respective parties. This contention is also overruled.

■ In his last contention Brace asserts that the $5,000 is a penalty rather than a provision for liquidated damages. This presents a more difficult question. As stated in 25 C.J.S. Damages § 102, p. 1032:

"The determination of whether a sum named in a contract to be paid on its breach is to be considered as liquidated damages or a penalty is a difficult question as to which there is no fixed and general rule applicable to all contracts."

The general rule is that if such a provision is for a penalty to secure performance of the contract, it is unenforceable

**70**

and the party claiming a breach is required to prove his actual damages. On the other hand, if the provision was actually intended by the parties to constitute an estimate by them of the damages which would be actually sustained by Dante in case of breach by Brace, and the amount so fixed is a reasonable estimate of just compensation for the harm to be caused by the breach, and the amount of damages is incapable or quite difficult of determination, it is enforceable. The parties' expression of intention in this respect is not controlling in making this determination. Stewart v. Basey, 150 Tex. 666, 245 S.W.2d 484, 486 (1952).

In the case at bar, it is clear to us that the parties could, at the time of making the "memorandum of understanding," properly have realized that if Brace decided not to consummate the transaction, as he had on two previous occasions, it would be difficult, if not impossible, to estimate accurately what damages Dante would sustain and from that point of view it was reasonable to stipulate what those damages would be. Moreover, the amount of "earnest money" agreed upon was in our opinion entirely reasonable, being approximately 10 per cent of the agreed sales price. Furthermore, there is nothing in the record before us to indicate that either of the parties considered the $5,000 "earnest money" as a penalty. They spoke of it as being "in lieu of any damages for breach of contract by Brace." While this language is, of course not controlling, we find in the record no evidence to the contrary and think it probably does accurately evidence the intention of the parties. In our opinion the case comes within the following text found in 17 Tex.Jur.2d, Damages, § 152, p. 219:

"The courts have established that parties have the legal right to stipulate the amount of damages that may be recoverable in actions for breach of contract. And on a showing that the stipulated sum was fairly estimated by the parties and that it was their intention that that sum be in lieu of all other damages, the agreement is binding and furnishes the measure of damages. In many situations the agreement fixes that which is almost impossible to be ascertained accurately, and in all cases it saves the expense and difficulty of producing evidence."

See also Elliott v. Henck, 223 S.W.2d 292, 295 (Tex.Civ.App., Galveston 1949) and Zucht v. Stewart Title Guaranty Co., 207 S.W.2d 414, 418 (Tex.Civ.App., San Antonio 1947, writ dism'd) and Irvin v. Lambert, 70 S.W.2d 495 (Tex.Civ.App., San Antonio 1934, writ dism'd).

We think the judgment was correct and, therefore, overrule both of Brace's points of error on appeal.

The judgment is affirmed