**COMMUNITY DEVELOPMENT SER-
VICE, INC., d/b/a Champion
Equity Corporation, Appellant,**

v.

**REPLACEMENT PARTS
MANUFACTURING,
INC., Appellee.**

No. 01–84–0092–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Oct. 18, 1984.

Barry G. Flynn, Barry G. Flynn & Associates, Houston, for appellant.

Andrew F. Spalding, Bracewell & Patterson, Houston, for appellee.

Before DOYLE, DUGGAN and LEVY, JJ.

## OPINION

DOYLE, Justice.

This is an appeal from a judgment awarding appellee damages for breach of contract in the amount of $71,820 actual damages, plus $11,440.60 prejudgment interest.

On October 6, 1978, appellant, Community Development Service, Inc., d/b/a, Champion Equity Corporation (Champion Equity) entered into a contract with appellee, Replacement Parts Manufacturing, Inc. (RPM) to purchase 144 residential lots over a three-year period. Title to the lots was to be acquired as each one was "taken down" or closed. Appellant was also required to pay interest to appellee and property taxes on any of the 144 lots for which legal title had not been acquired.

Between October 1978 and October 1980, appellant "took down" only 30 lots. Additionally, appellant stopped making tax and interest payments to appellee. Consequently, in October, 1980 appellee notified appellant that the contract was cancelled. In response thereto, appellant filed suit alleging that appellee had breached his contract by failing to deliver lots with construction of the roads in accordance with the City of Stafford and Federal Housing Authority (FHA) specifications. Appellee filed a counter-claim, alleging that appellant's failure to pay property taxes and interest constituted a material breach of the contract.

The jury found that appellant materially breached the contract and found that appellee suffered damages in the amount of $71,820 based on the lost profits on the non-sale of 114 residential lots.

In its first two points of error, appellant contends that the trial court erred in entering judgment based on the jury's response to special issue numbers 11 and 12 because appellant did not have a contractual obligation to pay property taxes as they accrued or to pay interest to appellee in October 1980. Thus, as a matter of law, such failure did not constitute a material breach of the contract in question.

In response to special issues 11 and 12, the jury specifically found that appellant's failure to pay interest and property taxes as they accrued to appellee in October 1980 constituted a material breach of the contract.

Appellant relies on his contractual interpretation of paragraphs II (b) and (c) of the contract of sale to substantiate his contention. These paragraphs describe the manner in which the purchase price of the lots shall be paid:

(c) The balance of the total purchase price shall be payable to Seller as follows:

(1) The sum of $310,500.00 (representing remaining 90% of lot price multiplied by 30 lots) shall be paid to Seller 60 days after notification to Buyer by Seller, which shall include certification of lot completion, at which time Seller shall convey to Buyer by general warranty deed, insured by owners title policy, good and indefeasible title to Buyer to 30 lots selected by Buyer, and

\*     \*     \*     \*     \*     \*

(4) The sum of $351,900.00 (representing remaining 90% of lot purchase price multiplied by 34 lots) shall be paid to Seller within 1095 days of said notification to Buyer by Seller of lot completion at which time Seller shall convey title as above described to remaining 34 lots. Provided however, (a) Buyer may at any time tender to Seller $10,350.00 per lot and demand that Seller convey title to lots selected by Buyer and the purchase price of any lots so acquired shall be counted in reduction of the next due installment of Buyer to Seller as above described; (b) Buyer shall pay all taxes as due from the date of lot completion and furnish Seller with copy of said paid tax receipts and (c) Buyer shall pay Seller interest at the rate of 10% per annum on the unpaid balance outstanding, such interest to commence upon the date of lot completion and to be payable quarterly thereafter.

Specifically, the appellant contends for the first time on appeal, that the last paragraph cited above, which describes the appellant's duty to pay taxes and interest to appellee, is part of paragraph II (c).

The contract also provides as follows:

Provided that the obligations of Seller as enumerated in paragraphs (a)–(f) of Paragraph I on pages 1–2 of this Con-

tract shall be conditions precedent to the obligations of Buyer as set forth in Paragraphs II(b) and (c) of this Contract with respect to each group of lots to be purchased thereunder.

Appellant urges this court to find that the above contractual language requires the seller (appellee) to fulfill certain "conditions precedent" before the buyer (appellant) will be responsible for payment of taxes and interest as allegedly required in paragraph II (c). Some of the conditions which the seller is required to fulfill are described in paragraph I(a):

Seller agrees to the following:

(a) Seller shall clear the street right-of-way and utility easements within Kingsway, it being understood that (1) any additional clearing shall be done by Buyer at its expense, and (2) Seller shall minimize damage to the trees within Kingsway; (b) each lot or reserve being conveyed shall be free of trash, garbage, or any improvements not contemplated hereby, and except for clearing of trees, be in a condition suitable for commencement of construction of single family detached housing; ...

Appellant claims that because appellee failed to keep each lot free of trash, the appellee had not fulfilled the conditions which activate appellant's responsibility for taxes and interest. The appellee argues that the language does not constitute a condition precedent, but merely a covenant, the breach of which might be a defense to any contract action by appellee against appellant.

■ As a general rule, where neither party has alleged that the contract is vague or ambiguous, the construction of the contract is a question of law for the court. *City of Pinehurst v. Spooner Addition Water Co.*, 432 S.W.2d 515 (Tex.1968). The court also construes the meaning of contracts where neither party makes allegations specifying the language subject to different interpretation, so that the opposing party is prepared to offer evidence explaining the meaning. *Sale v. Contran Corporation*, 486 S.W.2d 161 (Tex.Civ.App.

—Dallas 1972, writ ref'd n.r.e.). The court is required to give effect to the intention of the parties as expressed or as it is apparent in the writing. *Pitts v. Ashcraft*, 586 S.W.2d 685 (Tex.Civ.App.—Corpus Christi 1979, writ ref'd n.r.e.).

■ In the instant case, reading the contract as a whole and considering the surrounding circumstances, the trial court could have reasonably concluded that the paragraph which contained the language, "Buyer shall pay all taxes as due from the date of lot completion and furnish Seller with copy of said paid tax receipts", was not part of paragraph II (b) and (c) of the contract which set forth the conditions precedent to the obligation of buyer to pay the balance of the purchase price. Instead, the court could have construed the provision as being a written covenant, contained in a separate paragraph.

■ The passage containing the language starts a new paragraph which introduces an alternative method of purchasing the lots, and outlines the seller's obligation to pay taxes and interest. If the parties had intended this section to be part of paragraph II (c), they could have easily included it numbered as (c)(5) or clearly shown that it was part of (c)(4). Moreover, it is well established that if the intent of the parties is doubtful, or if a condition would impose an absurd or impossible result, then the agreement will be interpreted as creating a covenant rather than a condition. *Hohenberg Bros. Co. v. George E. Gibbons & Co.*, 537 S.W.2d 1, 3 (Tex.1976).

In the case at bar, to hold that the appellee's three-year obligation to make tax and interest payments on the lot was suspended until appellant cleared the occasional debris that accumulated on the lots would impose "an absurd result" particularly in light of the other conditions which suspend tax and interest payments.

Paragraph II(b) provides for payment only upon the completion of the development of 144 lots. Paragraph II(c) provides that the balance of the total purchase price is only payable sixty days after seller noti-

fies the buyer by sending certification of lot completion and conveying to buyer a general warranty deed.

The paragraph clearly demonstrates the parties' intention to condition appellant's obligation to pay the balance on the lots on their certification as being complete. Since such intent is not clearly demonstrated in the paragraph requiring the payment of taxes and interest, we find that the appellee's obligation to pay taxes and interest was not part of paragraph II(b) or (c) and was therefore not conditioned on appellee's keeping the lots clear of trash and debris. Points of error one and two are overruled.

In points of error three, four, and five, appellant contends that the trial court erred in granting judgment in favor of appellee for damages because there was no evidence, or alternatively insufficient evidence of the "benefit of the bargain" or the value of the property at the time appellee knew or should have known of the breach as compared to the value the property should have had at that time.

■ Generally, the measure of damages for breach of contract is the amount necessary to place plaintiff in a financial position equal to that which it would have had if the contract had been performed by both parties. *Little Darling Corp. v. Ald, Inc.,* 566 S.W.2d 347 (Tex.Civ.App.—Dallas 1978, no writ). Under this standard, the injured party is compensated only for the damages or loss actually sustained. *North American Corp. v. Allen,* 636 S.W.2d 797 (Tex. App.—Corpus Christi 1982, no writ).

■ Lost profits are recoverable under this standard if the evidence shows that the loss of profits was a material and probable consequence of the breach of the act complained of and the amount due is shown with sufficient certainty. *Id.* at 799; *see also Little Darling Corp., supra.*

■ Generally, lost profits are properly calculated by deducting the costs of the injured party's performance supported by data from the actual contract price. *Wilfin, Inc. v. Williams,* 615 S.W.2d 242, 244 (Tex.Civ.App.—Dallas 1981, writ ref'd n.r.

e.). However, a witness may also provide evidence of lost profits by testifying as to what his profit would have been, based on his knowledge of the cost of performance of each element of the contract and subtracting the total of such costs from the contract price. *Wilfin, Inc., supra* at 245.

In the instant case, the jury was given the following instructions for determining the damages:

### INSTRUCTION

In connection with the following Special Issue, you are only to consider such damage, if any, that you find from a preponderance of the evidence was shown to have been the natural, probable, and foreseeable consequence of Champion Equity's conduct or to have been within the contemplation of the parties. You may consider only those losses, if any, the payment of which would place R.P.M., Inc. as nearly as possible in the position it would have occupied had Champion Equity performed the contract, if, indeed it did not. You may consider only such damage, if any, that was actually sustained and you shall not speculate as to damages which, although possible, have not been proved by a preponderance of the credible evidence.

The jury was also to consider only such damage, if any, that they found from a preponderance of the evidence would give Champion Equity the benefit of its bargain as of the date Champion Equity knew of the breach or should have known of the breach, if any, of R.P.M., Inc. You are further instructed that benefit of its bargain is the difference between the value of what Champion Equity had at the time it knew or should have known of the breach and the value of what Champion Equity should have had at that time.

The jury was instructed to consider only such losses that would place appellee in the position it would have occupied had the breach not occurred. According to this instruction, lost profits would be included

within the foreseeable consequences of a lost sale, and would be recoverable if supported by the evidence. *Wilfin, Inc., supra.*

■ Evidence of appellee's lost profits was provided by Mr. Webster, who was the president and sole stockholder in appellee's corporation. Mr. Webster testified without objection that the costs of appellee's performance included a 10% down payment on its lots owned by Mr. Shipwash, which were to be resold by appellee to appellant.

The appellee had contracted to pay Mr. Shipwash $9720 per lot. Appellee then contemplated selling these same lots to appellant for $11,500 each.

Appellant had paid a down payment of 10% or $1,150 per lot to appellee, and had contracted to pay the remaining $10,350 per lot over a period of three years. Appellee had anticipated that his gross profit would be $630 per lot. Appellant's breach of contract, after purchasing only 30 of the 144 lots, caused appellee to lose $630 profit on each of the remaining 114 lots, or a total of $71,820. Mr. Webster's testimony provided competent evidence of appellee's "benefit of the bargain" which included lost profits. Appellant's third, fourth, and fifth points of error are overruled.

In its sixth point of error, appellant contends that the trial court erred in awarding appellee damages because the damages awarded were barred by the liquidated damages clause contained in the contract for deed.

The contract for deed provided as follows:

Seller shall give Buyer thirty (30) days written notice of any default hereunder and should the Buyer fail to correct such default within ten (10) days from receipt of notice, Seller, its successors or assigns, shall have, as its sole remedy the right to declare this agreement terminated and Buyers earnest money forfeited. In the event of default by Seller, Buyer's sole remedy is that the earnest money shall be refunded and this agreement terminated.

Appellant contends that this provision limited damages for any default by buyer to the earnest money paid to appellee. The jury found in response to special issue no. 15 that the earnest money totalled $165,600. Appellant further contends that since the above provision is enforceable as liquidated damages, and the appellee was in possession of the earnest money, the trial court was barred from awarding additional damages to appellee. The appellant further contends that the provision is unenforceable because it provides for a penalty to secure performance of the contract.

The leading case relating to appellant's contention is *Stewart v. Basey*, 150 Tex. 666, 245 S.W.2d 484, 486 (1952) which sets out the applicable rule in cases similar to the instant one:

In those cases in which courts enforce stipulations of the parties as a measure of damages for the breach of covenants, the principle of just compensation is not abandoned and another principle substituted therefor. What courts really do in those cases is to permit the parties to estimate in advance the amount of damages, provided they adhere to the principle of just compensation. Restatement of Contracts, Sec. 339, accurately expresses the rule as follows:

(1) An agreement, made in advance of breach fixing the damages therefor, is not enforceable as a contract and does not affect the damages recoverable for the breach, unless

(a) the amount so fixed is a reasonable forecast *of just compensation* for the harm that is caused by the breach, and

(b) the harm that is caused by the breach is one that is incapable or very difficult of accurate estimation. (emphasis added)

In *Stewart*, the court held that the "stipulated damage provision" in a lease would be treated as a penalty because the provision was not narrowly drawn or limited to the breach of any one major covenant, but could also be triggered by the breach of a trivial or unimportant covenant. The Tex-

as Supreme Court emphasized that the provision did not adhere to the rule of "just compensation." *Id. See also Bethel v. Butler Drilling*, 635 S.W.2d 834 (Tex.App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.); (Court refused to uphold a liquidated damages provision in a lease, which was triggered equally by the nonpayment of rent or the breach of any other covenant); *Mayfield v. Hicks*, 575 S.W.2d 571 (Tex.Civ. App.—Dallas 1978, writ ref'd n.r.e.); (Court condemned a similar provision as a penalty because the contract provided the same reparation for breach of each and every covenant); *Loggins Const. Co. v. Stephen F. Austin St. Univ.*, 543 S.W.2d 682 (Tex. Civ.App.—Tyler 1976, writ ref'd n.r.e.).

■ Under the principle of just compensation, "The general rule is that if such a provision is for a penalty to secure performance of the contract, it is unenforceable and the party claiming a breach is required to prove his actual damages." However, if the parties actually intended the provision to constitute their estimate of the damages that would actually be sustained by the party harmed by the breach, and the amount so fixed is a reasonable estimate of just compensation for the harm contemplated by the breach, and the amount of the damages is incapable or hard to determine, it is enforceable. The parties' intention in making the provision is not controlling in this respect. *Loggins Construction Co., supra; Brace v. Dante*, 466 S.W.2d 66, 69 (Tex.Civ.App.—Dallas 1971, no writ).

■ Applying this principle of law to the contractual provision before this court, we conclude that the parties intended that the provision constitute an estimate of their damages in the event of a breach. However, the amount fixed is not a reasonable forecast of just compensation for the harm caused by any breach of the contract.

The provision states that "upon any default hereunder by the buyer" or "in the event of default" by the seller, the sole remedy shall be the retention, or refund respectively, of any earnest money tendered. The defect in this provision which makes it a penalty rather than a liquidated damage provision, is that upon the occurrence of any default, even a minor one, by either party, the injured party may terminate the contract and keep over $160,000 in earnest money as damages.

■ A provision becomes a penalty if it provides for unreasonable damages for trivial breaches as well as reasonable damages for major breaches. *Stewart, supra; Bethel, supra;* and *Mayfield, supra.* It is immaterial that the actual breach was for default in tax and interest payments. *Mayfield, supra.* If the seller failed to keep any one lot entirely free from trash, or if the buyer paid the taxes but failed to furnish seller with a copy of paid tax receipts, either injured party could terminate the contract and demand to keep the earnest money. Certainly, such minor breaches could not be held to warrant termination of the contract plus the award or retention of any earnest money.

Because the clause in this case subjects the parties to the same reparation for any default under the contract, we hold that the provision is a penalty rather than one of liquidated damages. Therefore, the trial court did not err in awarding damages to appellee and the appellant's sixth point of error is overruled.

■ In its last point of error, appellant contends that the trial court erred in awarding damages to appellee based on the jury's response to special issue 13 because the appellee receives an inequitable windfall, recovering both the earnest money and $71,820 in lost profits. Appellant contends that this result is inequitable in that the award grants recovery of both liquidated damages and recovery of profits.

In special issue 13, the jury was instructed to consider only those losses, if any, the payment of which would place appellee as nearly as possible in the position it would have occupied had the appellant performed the contract. The jury was further instructed to consider only those damages that were shown to be the natural, proba-

ble, and foreseeable consequences of appellant's conduct.

The appellee contends that the jury correctly found that appellant's forfeited earnest money did not give appellee the benefit of its bargain and did not put appellee in the position it would have occupied had appellant performed the contract. Appellee points out that except for the defective liquidated damages provision, the contract does not provide that the earnest money must be returned once the parties began performance. Appellee urges this court to find that the jury rightfully considered the "realities of the transaction made the basis of this lawsuit."

The jury had sufficient evidence before it from which it could conclude that the retention of appellant's earnest money by appellee did not adequately compensate appellee for the harm caused by appellee's breach and did not place appellee in the position it would have occupied had the appellant performed the contract.

The record reflects that the earnest money contracted for and received by appellee reduced the amount of the outstanding purchase price. Both parties agree that between November 10, 1978 and March 1979, appellant closed or "took down" 30 lots under the contract for deed. Moreover, appellant paid approximately $222,021 in interest on lots not taken down. Several homes were built and sold on the lots "taken down." Clearly, both parties had begun performance of the three-year contract. This is important because there is no evidence that any of the "earnest money" was placed in an escrow account to secure performance of the contract. In fact, appellee testified that the majority of the money appellant paid to appellee was immediately passed to Mr. Shipwash in order to pay off the appellee's debt to Mr. Shipwash on the parallel contract. The record also reflects that appellee subtracted the amounts received from appellant on the "taken down" lots, including the $165,000 earnest money, before appellee computed his lost profits.

Therefore, the jury's finding, that appellee would need an additional $71,820 in order to be fairly and reasonably compensated for damages sustained by appellant's breach, was supported by the evidence and did not constitute a "double recovery." Appellant's seventh point of error is overruled.

The judgment of the trial court is affirmed.