Opinion issued April 2, 2009








 






In The

Court of Appeals

For The

First District of Texas






NO. 01-07-00904-CV






C.A. WALKER CONSTRUCTION COMPANY AND SAFECO SURETY,
Appellants


V.


J.P. SOUTHWEST CONCRETE, INC., Appellee






On Appeal from the 189th District Court

Harris County, Texas

Trial Court Cause No. 2005-70198






MEMORANDUM OPINION


 Appellants, C.A. Walker Construction Company and Safeco Surety
(collectively "Walker"), appeal from the trial court's judgment awarding appellee,
J.P. Southwest Concrete, Inc. ("J.P."), $47,000 in actual damages, as well as
attorney's fees and pre- and post-judgment interest. In its first three issues, Walker
contends the trial court erred in the amount of damages awarded to J.P. because (1)
the damages award is not supported by the evidence, (2) the language of the contract
between Walker and J.P. precludes at least some of the consequential damages sought
by Walker, and (3) J.P. did not plead for the damages the trial court awarded. In its
fourth issue, Walker contends the trial court improperly rendered judgment against
Walker on its counterclaim. We conclude that Walker waived its challenge to the
counterclaim due to inadequate briefing, and the trial court erred in its determination
of the amount of the damages award. We therefore affirm in part and reverse and
remand in part.

Background Walker was the general contractor on a construction project for the Spring
Branch Independent School District. J.P. was a subcontractor on the project and 
contracted to perform concrete work, including drilling pier holes and pouring
concrete piers. Among other requirements, the contract provided that extra work
performed by J.P. outside the scope of the contract must have Walker's approval and
signature in a written change order. The contract provided for Walker to pay
$243,000 in exchange for J.P.'s performance of "all concrete work" for the project,
including "concrete slabs, walks and paving" and "providing and placing all concrete
related: concrete, rebar, vapor barrier, form boards, expansion materials, and tie-wires." The contract did not mention site work or removal of existing obstructions. 
According to Jeff Pantle, J.P.'s president, J.P. was not responsible for site clearing,
demolition, and subsoil debris removal, and those jobs should have been done by the
time J.P. was to do the concrete work.

 In September 2004, when J.P. began its work for Walker, it encountered severe
subsoil obstructions while attempting to drill pier holes. Pantle and Donnelly, J.P.'s
superintendent, both described numerous obstructions J.P. encountered while
attempting to drill pier holes. Walker instructed J.P. to prepare and submit written
change orders to cover the removal of the obstructions. J.P. did submit a number of
written change orders for work outside the scope of the contract. However, Walker
only approved some of these orders.

 As work progressed, J.P. submitted applications for payment along with
supporting documentation. As of December 2004, J.P. had been paid $57,349.25. 
J.P. submitted another application for payment seeking $79,796 for January. Later,
J.P. sought a payment of $17,099 for work done in February. Walker did not pay J.P.
until March 16, 2005, when it paid $84,756.35. In exchange for the March 16, 2005
payment, Pantle, on behalf of J.P., executed a "Subcontractor Affidavit of Payment
and Partial Release of Lien."

 After the March 16, 2005 payment, the amount remaining to be performed
under the contract was $132,043.40 and J.P. continued to work for Walker. Walker
told J.P. that subsoil debris and obstructions had been removed and requested it
continue drilling pier holes. J.P. went to the site, bringing with it another
subcontractor that had drilling equipment, but was unable to perform work due to
subsoil debris and obstructions. Walker acknowledged that it owed J.P. money as
payment for this work that was done March 22, 2005, but only for the amount of
$2,848.

 For several months, J.P. attempted to get paid for the work it had done. J.P.
sent a demand letter stating Walker owed J.P. $77,501, which was for $19,501 for
completed, unpaid work and $58,000 in lost profits. When Walker did not pay the
amount requested, J.P. filed suit for that same amount. Walker requested a disclosure
under rule 194.2(d) of "the amount and any method of calculating economic
damages." (1) J.P. replied,

 Damages: $19,501.00 for billed unpaid work,

 $58,000.00 lost profit,

 

 Total: $77,501.00


At the bench trial, Pantle testified J.P. was seeking $19,501 for unpaid work and
$58,000 for lost profits.

 Several weeks after the trial concluded, J.P. filed a motion for entry of
judgment. Within this motion, J.P. asserted total damages in the amount of
$74,059.52 for the following:

 $17,099.00 for unpaid contract work in February 2005[;]

 $21,748.52 for unpaid contract work in March 2005[;]

 $8,389.00 for funds retained by Walker from previous payments[; and]

 $26,823.00 for extra work completed for unsigned change orders.


J.P. requested that the $74,059.52 be reduced to $69,099.17 to allow for a credit for
the amount by which the March 16, 2005 payment exceeded the requested payment
for the January work. J.P. then requested that the $69,099.17 be increased to
$72,699.17 to compensate for $3,600 for Transit Mix's attorney's fees paid by J.P. 
In addition, instead of the $58,000 originally sought for lost profits, J.P. reduced its
lost profits claim to $26,499.05. The proposed judgment submitted by J.P. stated the
actual damages as the sum of the unpaid work and Transit Mix attorney's fees only;
it did not include the reduced lost profits. The trial court rendered judgment in favor
of J.P., awarding $47,000 in actual damages. The trial court did not explain how it
reached the $47,000 figure, nor did it make findings of fact and conclusions of law. The Amount of Damages

 Walker challenges the $47,000 amount for damages by claiming any damages
incurred prior to March 16, 2005 are disclaimed by J.P. in a release; the evidence
does not support the lost profits claim; J.P. cannot recover damages from Walker for
Transit Mix's lawsuit against J.P.; and J.P. cannot recover damages never disclosed
to Walker until after trial. We agree with Walker that it would have been improper
for the trial court to render its damages award by taking any of these damages into
account in its award to J.P. 

 A. Release

 As part of its first issue, Walker contends, "The damage award is not supported
by the evidence introduced at trial" because J.P. agreed to release all damages
stemming from any payments due prior to the date the release was executed, on
March 16, 2005, which left only $2,848 in damages for work done March 22, 2005.

 1. Sufficiency of Pleadings and Trial by Consent

 J.P. contends Walker waived any issue concerning the release because release
is an affirmative defense that was not pleaded by Walker.

 The Texas Rules of Civil Procedure require certain defenses, including the
defense of "release," to be affirmatively pleaded. Tex. R. Civ. P. 94. Generally, an
affirmative defense is waived if it is not pleaded. Alvarado v. Wingfoot Enters., 53
S.W.3d 720, 725 (Tex. App.--Houston [1st Dist.] 2001) (quoting Shoemake v. Fogel,
Ltd., 826 S.W.2d 933, 937 (Tex. 1992)) rev'd on other grounds by 111 S.W.3d 134
(Tex. 2003). However, "[u]npleaded claims or defenses that are tried by express or
implied consent of the parties are treated as if they had been raised by the pleadings." 
Hartford Fire Ins. Co. v. C. Springs 300, Ltd., No. 01-06-00065-CV, 2008 WL
2208887, at *6 (Tex. App.--Houston [1st Dist.] May 29, 2008, no pet. h.) (citing
Roark v. Stallworth Oil & Gas, Inc., 813 S.W.2d 492, 495 (Tex. 1991)). "The party
who allows an issue to be tried by consent and who fails to raise the lack of a
pleading before submission of the case cannot later raise the pleading deficiency for
the first time on appeal." Id. (citing Roark, 813 S.W.2d at 495). "Moreover, '[w]hen
issues not raised by the pleadings are tried by express or implied consent of the
parties, they shall be treated in all respects as if they had been raised in the
pleadings.'" Id. (quoting Tex. R. Civ. P. 67). "To determine whether an issue was
tried by consent, we examine the record not for evidence of the issue, but rather for
evidence of trial of the issue." Id. (citing Case Corp. v. Hi-Class Bus. Sys. of Am.,
Inc., 184 S.W.3d 760, 771 (Tex. App.--Dallas 2005, pet. denied)). "A party's
unpleaded issue may be deemed tried by consent when evidence on the issue is
developed under circumstances indicating that both parties understood the issue was
in the case, and the other party failed to make an appropriate complaint." Id. (citing
Case Corp., 184 S.W.3d at 771). 

 Here, it is undisputed Walker did not plead release as an affirmative defense. 
We therefore must examine the evidence of this issue being tried by consent. Id. In
opening statements, Walker's counsel raised the issue of the release. The release was
admitted into evidence without objection. Walker testified the March payment was
made despite J.P. not providing all the required documentation and included amounts
for work that had not been done by J.P. In response to questions from the judge,
Walker's counsel asserted the plain language of the release indicated J.P.
acknowledged that, as of March 16, 2005, it had been paid for all work. Pantle was
cross-examined concerning the release, acknowledging he signed it. J.P.'s counsel
then conducted a re-direct examination of Pantle concerning the circumstances
surrounding the signing of the release. The trial court did not hear closing arguments,
but instead discussed a number of issues with counsel. The release came up several
times and both sides presented their theories and arguments concerning the proper
interpretation and effect of the release. J.P. did not complain of the lack of pleadings
to support the affirmative defense of release before the trial court, raising the issue
for the first time in its brief to this Court.

 We conclude the issue of release was tried by consent because the record shows
the release was introduced at the trial without objection, witnesses were examined
concerning the release, both parties discussed and argued the meaning and effect of
the release to the trial court, and J.P. did not make any complaint concerning the lack
of pleadings to support the defense of release. See Hartford Fire Ins. Co., 2008 WL
2208887 at *7 (concluding issue tried by consent when issue "was raised several
times during the trial" and no objection to lack of pleadings made until charge
conference).

 2. Consequence of the Release 

 Walker contends J.P. released all damages stemming from any payments due
prior to March 16, 2005, the date the release was executed.

 A release is a type of contract and is construed according to the rules governing
contracts generally. Baty v. ProTech Ins. Agency, 63 S.W.3d 841, 848 (Tex.
App.--Houston [14th Dist.] 2001, pet. denied). Our primary concern when
construing a written contract is to ascertain the true intent of the parties, as expressed
in the contract itself. Coker v. Coker, 650 S.W.2d 391, 393 (Tex. 1983). In
determining intent, we must look to the contract, not what the parties allegedly meant. 
Union Pacific R.R. v. Novus Int'l, Inc., 113 S.W.3d 418, 421 (Tex. App.--Houston
[1st Dist.] 2003, pet. denied). An unambiguous contract will be enforced as written. 
David J. Sacks, P.C. v. Haden, 266 S.W.3d 447, 450 (Tex. 2008). Parol evidence
may not be introduced to create an ambiguity or to alter the intent of the parties as
expressed in the instrument. Id.

 The release signed by Pantle on behalf of J.P. acknowledges payment of
$84,756.35 "and other good and valuable consideration." It then states, 

 Subcontractor waives, releases, relinquishes and discharges all known
and unknown causes of action, including, but not limited to those arising
out of contract, by statute, in tort or otherwise, and waives, releases,
relinquishes and agrees to discharge any suits, debts, accounts, bonds,
contracts, promises, damages, liens, encumbrances, judgments, claims
and demands whatsoever, in law or equity, which are against the
Contractor . . . that the Subcontractor now has or might hereinafter
obtain that relates directly or indirectly to the aforesaid relationship,
Contract, and/or Project.


 . . . . 


 Subcontractor and I hereby acknowledge that Subcontractor has
previously been paid from Contractor $57,349.25 for the above named
job, and this payment constitutes full payment for the work performed
to date and any and all change orders or claims for additional work
performed. . . . 


 J.P. challenges the release by pointing to Pantle's testimony and letters written
by Walker that state that the March 16, 2005 payment is only for work done in
January 2005. The release itself, however, plainly states that the $84,756.35
"payment constitutes full payment for the work performed to date and any and all
change orders or claims for additional work performed." The testimony and letters
are parol evidence that cannot properly be considered to change the written terms of
the release. See David J. Sacks, P.C., 266 S.W.3d at 451. 

 J.P. also asserts "the numbers at the top of right 0105, is the date January
2005." The portion of the release that J.P. points to states, "Date: 03/16/2005
Payment Request: 0105R." The date of the release clearly is March 16, 2005, which
is also the date Pantle signed the release. We conclude that by signing the release, 
J.P. acknowledged it was fully paid for all work it had performed as of March 16,
2005. 

 We sustain Walker's first issue to the extent that the trial court would have
erred by including any amounts for work done before March 16, 2005 because J.P.
released its claim for those amounts. 

 B. Lost Profits Damages

 Within its first issue, Walker contends J.P.'s claim for lost profits is not
supported by the evidence. Specifically, Walker contends lost profits must be proved
with reasonable certainty and J.P. failed to do so, because J.P.'s claim for lost profits
assumed a 25 percent profit margin based on speculation. 

 1. Recovery of Lost Profits

 In a breach-of-contract case, damages are usually measured by the "benefit-of-the-bargain" standard, intended to put the party seeking damages in as good a
position as if the contract had been performed. Bowen v. Robinson, 227 S.W.3d 86,
96 (Tex. App.--Houston [1st Dist.] 2006, pet. denied). Benefit-of-the-bargain
damages may include reasonably certain lost profits. Id. "Lost profits are damages
for the loss of net income to a business and, broadly speaking, reflect income from
lost business activity, less expenses that would have been attributable to that
activity." Id. (citing Miga v. Jensen, 96 S.W.3d 207, 213 (Tex. 2002)). In other
words, "[l]ost profits must be based on net profits, not gross revenues." Texaco, Inc.
v. Phan, 137 S.W.3d 763, 771 (Tex. App.--Houston [1st Dist.] 2004, no pet.). 

 To recover lost profits, the party seeking them must prove them with
reasonable certainty and competent evidence. Bowen, 227 S.W.3d at 96. "Generally,
lost profits are properly calculated by deducting the costs of the injured party's
performance supported by data from the actual contract price." Id. (citing Cmty. Dev.
Serv., Inc. v. Replacement Parts Mfg., Inc., 679 S.W.2d 721, 725 (Tex.
App.--Houston [1st Dist.] 1984, no writ)). "However, a witness may also prove lost
profits by testifying as to what his profit would have been, based on his knowledge
of the cost of performance of each element of the contract and subtracting the total
of such costs from the contract price." Id. (quoting Cmty. Dev. Serv., Inc., 679
S.W.2d at 725). "What constitutes reasonably certain evidence of lost profits is a fact
intensive determination. At a minimum, opinions or estimates of lost profits must be
based on objective facts, figures, or data from which the amount of lost profits can
be ascertained." Id. at 97 (quoting Holt Atherton Indus., Inc. v. Heine, 835 S.W.2d
80, 84 (Tex. 1992)).

 2. Evidence of Lost Profits

 At trial, Pantle testified J.P. was seeking $58,000 in lost profits. The following
testimony is the only calculation Pantle provided:

 Q: Okay. How did you arrive at the $58,000 lost profits?

 

 A: I based it on the contract amount, the approved change orders that
Walker did approve. Then I added in the unchanged--the
unsigned change orders. I came up with a total, subtracted it from
what had already been paid, came up with a balance and then put
a 25 percent net markup on that.

 

 Q: How--what do you mean by 25 percent?

 

 A: On a job, on this particular job, I had a 25 percent--not
gross--but net markup.

 

 Q: And the $58,000 lost profits reflects that 25 percent flat figure?

 

 A: Well, it--it's that and the change orders and such.


 J.P. contends this evidence is "based on objective facts from which the amount
of the lost profits can be ascertained," citing Texaco, Inc. v. Phan as support. In
Texaco, this Court found the affidavit testimony of the owners of a gas station and
convenience store was no evidence to support an award of lost profits. Texaco, Inc,
137 S.W.3d at 772. The owners stated they had a profit margin of 30 percent, basing
this assertion on the prior 17 months of operation at their stores. Id. However, this
Court noted that the owners did not define "profit margin" or address expenses. Id. 
The bare assertion of a profit margin of a certain percent, even one based on prior
experience, was not sufficient evidence to support an award of lost profits. Id. at
772-73.

 Here, like the owners in Texaco, Pantle did not address J.P.'s expenses. See
id. at 772. Pantle did not testify what expenses J.P. would incur in performing the
contract. Rather, he simply stated, "On a job, on this particular job, I had a 25
percent--not gross--but net markup." Pantle did not "testify[] as to what his profit
would have been, based on his knowledge of the cost of performance of each element
of the contract and subtracting the total of such costs from the contract price." 
Bowen, 227 S.W.3d at 96. J.P. failed to present "objective facts, figures, or data from
which the amount of lost profits can be ascertained." See id. at 97. We conclude the
evidence is factually insufficient to support an award of lost profits. See id.; Texaco,
Inc, 137 S.W.3d at 772-73. 

 We sustain Walker's first issue to the extent that the trial court would have
erred by including any amounts for lost profits because the evidence did not show
objective facts, figures, or data from which the amount of lost profits could be
ascertained. Further, any lost profits incurred before March 16, 2005 are not properly
included in the award. 

 C. Consequential Damages

 In its second issue, Walker asserts the contract language precluded J.P.'s
recovery of its claimed damages incurred by paying the claims asserted against J.P.
by Transit Mix. Walker contends that part of the $58,000 lost profit award sought by
[J.P] was a claim for consequential damages for costs associated with settling a
lawsuit asserted against it by one of its subcontractors, Transit Mix[,]" a company that
sued J.P. to recover payment for supplies.

 The contract provides,

 In the event suit is filed by any person, firm or corporation asserting a
claim or lien for labor, services or materials used or purchased for use
in the work covered by this contract, [J.P.] will, at its own cost and
expense, including counsel fees, defend such suit and pay any judgment
rendered therein.


The plain language of the contract excuses Walker from paying any damages for a
suit filed against J.P. by Transit Mix for services or materials, or the attorney's fees
incurred by Transit Mix and paid by J.P. See David J. Sacks, P.C., 266 S.W.3d at 450
(stating unambiguous contract will be enforced as written). Additionally, to the
extent the damages award included materials provided before March 16, 2005, the
release executed by J.P. precludes such an award. We sustain Walker's second issue
to the extend the trial court may have included damages for Transit Mix's attorney's
fees.

 D. Unpleaded and Undisclosed Elements of Damages

 In its third issue, Walker contends the trial court erred to the extent it based the
award of damages to J.P. on damages not pleaded or disclosed prior to trial. J.P. does
not reply to Walker's issue concerning the failure to disclose the amount and method
of calculating damages, instead asserting, "The damages models presented by [J.P.]
[w]as supported in the testimony of Pantle and succinctly set out at CR000089, in
[J.P.'s] Motion for Entry of Judgment."

 Texas Rule of Civil Procedure rule 194.2(d) provides that a party may request
disclosure of "the amount and any method of calculating economic damages." Tex.
R. Civ. P. 194.2(d). Comment 2 to the rule provides that subsection (d) is "intended
to require disclosure of a party's basic assertions, whether in prosecution of claims
or in defense." Id. cmt. 2. As an example of the required disclosure, comment 2
notes, that, in a claim for damages suffered in a car accident, the plaintiff would be
required to state how loss of past earnings and future earning capacity was calculated. 
Id.

 Rule 193.6(a) provides, "A party who fails to make, amend, or supplement a
discovery response in a timely manner may not introduce in evidence the material or
information that was not timely disclosed." Tex. R. Civ. P. 193.6. The purpose
behind this rule is to prevent trial by ambush. Harris County v. Inter Nos, Ltd., 199
S.W.3d 363, 367 (Tex. App.--Houston [1st Dist.] 2006, no pet.) (citing Aetna Cas.
& Sur. Co. v. Specia, 849 S.W.2d 805, 807 (Tex. 1993)). "Absent a showing of good
cause, lack of unfair surprise, or lack of unfair prejudice, rule 193.6 mandates
exclusion of the undisclosed material or information." Id. "The burden of
establishing good cause or the lack of unfair surprise or unfair prejudice is on the
party seeking to introduce the evidence . . . ." Tex. R. Civ. P. 193.6(b); Harris
County, 199 S.W.3d at 367. 

 In the demand letter, petition, response to the request for disclosure under rule
194.2(d), and at trial, J.P. sought damages for $77,501, an amount consisting of
$19,501 for unpaid work and $58,000 for lost profits. However, the request for
$19,501 for unpaid work was changed after the trial to become a request for damages
for $17,099.00 for unpaid contract work in February 2005; $21,748.52 for unpaid
contract work in March 2005; $8,389.00 for funds retained by Walker from previous
payments; and $26,823.00 for extra work completed for unsigned change orders. The
request for $58,000 for lost profits was reduced after the trial to $26,499.05. 
Additionally, after the trial, a new request for damages was made by J.P. for $3,600
for Transit Mix's attorney's fees paid by J.P. We conclude the post trial requests for
damages and attorneys fees violated rule 193.6 because J.P. failed to amend its
responses to requests for disclosure, and rule 194.2(d) because J.P. failed to disclose
the amount and method of calculating economic damages. Tex. R. Civ. P. 193.6,
194.2(d); see also Harris County, 199 S.W.3d at 368 (holding trial court did not
abuse discretion in excluding evidence concerning Harris County's calculation of fair
market value in condemnation case because Harris County did not present evidence
of good cause, lack of unfair surprise, or lack of unfair prejudice in failing to correct
erroneous response to request for disclosure). We sustain the third issue to the extent
the trial court erred if it based the damages award on the undisclosed method of
calculating economic damages. See id. 

 E. Conclusion

 Although the trial court did not make findings of fact and conclusions of law
to show how it reached the $47,000 damages figure, we conclude that the amount of
the award is erroneous because the figure could not have been reached without taking
into consideration amounts that were disclaimed by the release, were for lost profits, 
were for Transit Mix's lawsuit, or were not properly disclosed before post trial. We
must therefore remand the cause for a new damages determination.

Walker's Counterclaim

 In its fourth issue, Walker contends, "Although the trial court never expressly
disposed of [Walker's] counterclaim for breach of contract, the court implicitly ruled
in favor of [J.P.]." Walker, however, does not cite to a single authority in its
discussion of this issue. We hold error, if any, is waived due to inadequate briefing. 
See Tex. R. App. P. 38.1(i) ("The brief must contain a clear and concise argument for
the contentions made, with appropriate citations to authorities and to the record.");
Tesoro Petroleum Corp. v. Nabors Drilling USA, Inc., 106 S.W.3d 118, 128 (Tex.
App.--Houston [1st Dist.] 2002, pet. denied) (holding rule 38 not satisfied by
"merely uttering brief conclusory statements, unsupported by legal citations").

 We overrule Walker's fourth issue.

Conclusion

 We affirm that portion of the trial court's judgment rendering a take-nothing
judgment on C.A. Walker Construction and Safeco Surety's counterclaim. We
reverse that portion of the trial court's judgment awarding damages to J.P. Southwest
Concrete, Inc. and remand this cause to the trial court for the limited purpose of
conducting a new trial on the issue of damages. 

 


 Elsa Alcala

 Justice


Panel consists of Chief Justice Radack and Justices Alcala and Hanks.

1. Tex. R. Civ. P. 194.2(d).