Opinion issued April 9, 2009


 











In The

Court of Appeals

For The

First District of Texas






NO. 01-07-00574-CV






B&W SUPPLY, INC. AND WESTON WYATT, INDIVIDUALLY,
Appellants


V.


LAWRENCE AND DIANE BECKMAN, Appellees






On Appeal from the 215th District Court

Harris County, Texas

Trial Court Cause No. 2006-21011






O P I N I O N


 In this breach of contract suit, appellants, B&W Supply, Inc. and Weston
Wyatt, Individually (collectively referred to as B&W) challenge the trial court's order
granting judgment notwithstanding the verdict (JNOV) in favor of appellees,
Lawrence and Diane Beckman. In three issues on appeal, B&W argues that the trial
court improperly granted the Beckmans' JNOV when evidence existed to support the
jury's findings that (1) the Beckmans breached the contract; (2) B&W Supply was
entitled to lost profits; and (3) B&W Supply was entitled to reasonable and necessary
attorney's fees. In their cross-appeal, the Beckmans argue that the trial court erred
in (1) disregarding the jury's response excusing B&W's breach because the evidence
at trial was legally insufficient to support a finding that B&W was excused from its
obligation to perform the contract and (2) not submitting their DTPA claim to the
jury. 

 We reverse the JNOV.

Background


 B&W and the Beckmans entered into a contract for B&W to perform
remodeling work in several rooms of the Beckmans' home for $60,000. The contract
called for various progress payments throughout the project. By January 9, 2006, the
Beckmans had paid B&W $30,000 and half of the project remained to be finished. 
Around this time a dispute arose leading B&W to cease all work on the project. The
Beckmans sued B&W for breach of contract, Deceptive Trade Practices Act (1)
violations, conversion, breach of fiduciary duty, violations of Chapter 162 of the
Texas Property Code, (2) and attorney's fees. B&W counterclaimed for lost profits. 
The parties presented conflicting evidence on whether the Beckmans fired B&W or
whether B&W walked off the job. 

 At the conclusion of the trial, the jury found (1) in questions one and two that
B&W failed to perform the contract but that such failure was excused; (2) in
questions three and four that the Beckmans failed to perform the contract and that
such failure was not excused; (3) in question six that B&W was entitled to $9,000 in
damages; and (4) in question eight that B&W was entitled to attorney's fees in the
amounts of (a) $25,000 for trial, (b) $12,500 for an appeal to the court of appeals, and
(c) $10,000 to an appeal to the Supreme Court of Texas.

 B&W filed a motion to enter judgment on the verdict, and the Beckmans filed
a motion for JNOV contending that "B&W did not offer legally sufficient evidence
of its cost of completion, or even consider or present evidence about the actual
expenses it had incurred to date." The Beckmans also contended that B&W had
presented legally insufficient evidence that the Beckmans breached the contract and
no evidence that B&W was excused from performance. 

 In its final judgment, the trial court granted in part the Beckmans' motion for
JNOV and denied B&W's motion to enter judgment on the verdict. The trial court
disregarded the jury's answers to questions three (the Beckmans' breach), six
(B&W's lost profit damages), and eight (B&W's attorney's fees), and held that B&W
would take nothing from the Beckmans on B&W's counterclaim, that the Beckmans
would take nothing from B&W, and that each party would pay its attorney's fees. 
Both parties filed a notice of appeal.

JNOV


 A trial court may disregard a jury's findings and grant a motion for judgment
notwithstanding the verdict only when a directed verdict would have been proper. 
See Tex. R. Civ. P. 301; Fort Bend County Drainage Dist. v. Sbrusch, 818 S.W.2d
392, 394 (Tex. 1991); see also Prudential Ins. Co. v. Fin. Review Servs., Inc., 29
S.W.3d 74, 77 (Tex. 2000) (directed verdict proper only when evidence conclusively
establishes right of movant to judgment or negates right of opponent or evidence is
insufficient to raise material fact issue); Cain v. Pruett, 938 S.W.2d 152, 160 (Tex.
App.--Dallas 1996, no writ) (directed verdict proper when evidence reflects that no
other verdict can be rendered and moving party is entitled to judgment as a matter of
law). A JNOV should be granted when the evidence is conclusive and one party is
entitled to recover as a matter of law or when a legal principle precludes recovery. 
Morrell v. Finke, 184 S.W.3d 257, 290 (Tex. App.--Fort Worth 2005, pet. denied);
see also United Parcel Serv., Inc. v. Tasdemiroglu, 25 S.W.3d 914, 916 n.4 (Tex.
App.--Houston [14th Dist.] 2000, pet. denied) ("A court should grant a motion for
judgment notwithstanding the verdict if a legal principle prevents a party from
prevailing on its claim.").

 An appellate court reviews a JNOV under a no-evidence standard of review. 
See Garton v. Rockett, 190 S.W.3d 139, 144 (Tex. App.--Houston [1st Dist.] 2005,
no pet.). That is, we will affirm only if there is no evidence to support an issue, or
conversely, if the evidence establishes an issue as a matter of law. See Best v. Ryan
Auto Group, Inc., 786 S.W.2d 670, 671 (Tex. 1990); Garton, 190 S.W.3d at 144. To
determine whether there is no evidence to support the jury's finding, "we must view
the evidence in a light that tends to support the finding of disputed fact and disregard
all evidence and inferences to the contrary." Wal-Mart Stores, Inc. v. Miller, 102
S.W.3d 706, 709 (Tex. 2003). If more than a scintilla of evidence supports the jury's
finding, "the jury's verdict, and not the trial court's judgment must be upheld." Id.
More than a scintilla of evidence exists when the evidence "rises to a level that would
enable reasonable and fair-minded people to differ in their conclusions." Ford Motor
Co. v. Ridgway, 135 S.W.3d 598, 601 (Tex. 2004) (quoting Merrell Dow Pharm., Inc.
v. Havner, 953 S.W.2d 706, 711 (Tex. 1997)). Evidence that is "so weak as to do no
more than create a mere surmise," however, is no more than a scintilla and, thus, no
evidence. Id. (quoting Kindred v. Con/Chem, Inc., 650 S.W.2d 61, 63 (Tex. 1983)).


Breach of Contract 

 In its first issue, B&W argues that the trial court improperly granted the
Beckmans' JNOV when evidence existed to support the jury's findings that the
Beckmans failed to perform the contract. 

 In question one, the jury was asked, "Did the Beckmans fail to perform the
contract?" The jury answered, "yes." In its final judgment, the trial court stated that
it disregarded the jury's answer.

 The essential elements of a breach of contract claim are (1) the existence of a
valid contract; (2) performance or tendered performance by the plaintiff; (3) breach
of the contract by the defendant; and (4) damages sustained as a result of the breach. 
Valero Marketing & Supply Co. v. Kalama Int'l, 51 S.W.3d 345, 351 (Tex.
App.--Houston [1st Dist.] 2001, no pet.). "A breach of contract occurs when a party
fails or refuses to do something he has promised to do." Mays v. Pierce, 203 S.W.3d
564, 575 (Tex. App.--Houston [14th Dist.] 2006, pet. denied).

 B&W contends that sufficient evidence supports the jury's finding that the
Beckmans breached the contract. Specifically, B&W contends that the Beckmans
breached in two ways: (1) Mr. Beckman ordered B&W Supply off his property and
(2) the Beckmans did not provide B&W with the third $15,000 progress payment.

 Wyatt testified that the job started on December 1, 2005, it was "going great,"
and he was making money. Wyatt further testified that he had a conversation with
Mr. Beckman on January 9 in which Mr. Beckman asked what he was making on the
project. Wyatt told him 30%, and Mr. Beckman said that was outrageous. Mr.
Beckman then said that Wyatt needed to give him line-item approval on everything
from then on, to which Wyatt replied that he could not. Wyatt then testified that Mr.
Beckman "went off on me. And told me that if I didn't do line-item approval, that I
should not come back to this job. I don't want you on my property." Wyatt
responded, "I'm not going to come back." Wyatt then called his subcontractors and
told them that he had been fired. Wyatt testified that Mr. Beckman called him
dishonest and that Mr. Beckman gave him an ultimatum that "if I didn't go with line-item approval, that he did not want me to come back to the job." After January 10,
2006, Wyatt did not return to the project. Wyatt also testified that Mrs. Beckman
never offered to pay the third draw. He stated that when he talked to her on January
10 or 11, she never mentioned anything about the third draw, which was due. 

 Mrs. Beckman testified that "we did indeed agree to advance him the $15
thousand in those four incremental payments." Mrs. Beckman testified that on
January 4, they were happy with B&W's work. She also testified that the third draw
had been requested before the meeting that was scheduled for January 10. Mrs.
Beckman told Wyatt that she would give him the third draw at the meeting, but the
meeting never occurred. She admitted that when she talked to Wyatt on January 11,
she did not tell him that she would give him the third draw. She further admitted that
she asked Wyatt for his subcontractors' phone numbers. She agreed with Wyatt's
counsel that if she called the subcontractors directly, she would not have to pay the
contractor's fees. 

 From the evidence presented, we conclude that the jury could have reasonably
concluded that the Beckmans breached the contract by firing B&W and by not paying
the third draw. Accordingly, we hold that the trial court erred in disregarding the
jury's findings in question three on whether the Beckmans failed to perform the
contract. (3)

Lost Profits

 In its second issue, B&W argues that the trial court improperly granted the
Beckmans' motion for JNOV because evidence existed to support the jury's findings
that B&W Supply was entitled to lost profits.

 Question six of the jury charge asks,

 What sum of money, if any, if paid now in cash, would fairly and
reasonably compensate B&W for its damages, if any, that resulted from
such failure to perform?


 Consider the following element of damages, if any, and none
other.


 Lost profits on the remaining contract amount that were a natural,
probable and foreseeable consequence of the Beckmans' failure
to perform. 


The jury awarded B&W $9,000 in lost profits. In its final judgment, the trial court
stated that it was disregarding the jury's answer.

 Lost profits are damages for the loss of net income to a business and, broadly
speaking, reflect income from lost business activity, less expenses that would have
been attributable to that activity. Miga v. Jensen, 96 S.W.3d 207, 213 (Tex. 2002); 
see generally Capital Metro. Transp. Auth. v. Cent. of Tenn. Ry. & Navigation Co.,
114 S.W.3d 573, 581-82 & n.7 (Tex. App.--Austin 2003, pet. denied) (considering
both income projections and specific expenses when evaluating proof of lost profits). 
Lost profits may be recovered for money that would have been made if the bargain
had been performed as promised. Formosa Plastics Corp. v. Presidio Eng'rs &
Contractors, Inc., 960 S.W.2d 41, 50 (Tex. 1998). To be recovered, lost profits must
be proved with reasonable certainty and competent evidence. Szczepanik v. First S.
Trust Co., 883 S.W.2d 648, 649 (Tex. 1994).

 Lost profits are recoverable only if the evidence shows that the loss of profits
was a material and probable consequence of the breach complained of and the amount
due is shown with sufficient certainty. Cmty. Dev. Serv., Inc. v. Replacement Parts
Mfg., 679 S.W.2d 721, 725 (Tex. App.--Houston [1st Dist.] 1984, no writ). 
Generally, lost profits are properly calculated by deducting from the actual contract
price the costs of the injured party's performance supported by data. Id. "However,
a witness may also prove lost profits by testifying as to what his profit would have
been, based on his knowledge of the cost of performance of each element of the
contract and subtracting the total of such costs from the contract price." Id.

 "The requirement of 'reasonable certainty' in the proof of lost profits is
intended to be flexible enough to accommodate the myriad circumstances in which
claims for lost profits arise." SW Battery Corp. v. Owen, 115 S.W.2d 1097, 1099
(Tex. 1938). "What constitutes reasonably certain evidence of lost profits is a fact
intensive determination. At a minimum, opinions or estimates of lost profits must be
based on objective facts, figures, or data from which the amount of lost profits can
be ascertained." Holt Atherton Indus., Inc. v. Heine, 835 S.W.2d 80, 84 (Tex. 1992);
see, e.g., Pena v. Ludwig, 766 S.W.2d 298, 304 (Tex. App.--Waco 1989, no writ);
Frank B. Hall & Co. v. Beach, Inc., 733 S.W.2d 251, 258 (Tex. App.--Corpus Christi
1987, writ ref'd n.r.e.); Keller v. Davis, 694 S.W.2d 355, 357 (Tex. App.--Houston
[14th Dist.] 1985, writ ref'd n.r.e.); Automark of Tex. v. Disc. Trophies, 681 S.W.2d
828, 830 (Tex. App.--Dallas 1984, no writ). "Although supporting documentation
may affect the weight of the evidence, it is not necessary to produce in court the
documents supporting the opinions or estimates." Holt Atherton Indus., Inc., 835
S.W.2d at 84.

 Wyatt testified that he makes a list of anticipated expenses when bidding
contracts and that he includes "surprise" money, usually 10 percent or less. He then
adds all of his numbers and multiplies the sum by 30 percent. The total of those two
numbers is the cost of the job. He testified that if there is no surprise, he gets to keep
the money. He also testified that the 30 percent is the amount of profit he tries to
make on the job. 

 The contract that the parties signed involved remodeling the Beckmans' media
and game rooms, living room, dining room, foyer, wet bar, kitchen, powder bath,
master bedroom, and master bathroom. The contract stated that the project would
take seven to ten weeks to complete at a price of $60,000. The contract contemplated
three progress payments of $15,000, a fourth progress payment of $14,000, and, upon
completion, a final payment of $1,000. 

 The evidence further shows that, as of January 9, 2006, B&W had spent
$20,655. On January 9, the Beckmans paid $30,000. Wyatt testified that out of the
$30,000 the Beckmans paid, B&W took out a $9,000 profit. Wyatt testified that if the
job had been completed he would have gotten an additional $9,000 profit, but he
corrected himself that it would actually be $7,593. The trial court admitted
defendant's exhibit 21, which was a summary of labor and materials for the
remodeling job. The exhibit shows that the contract amount was $60,000, estimated
expenses were $43,407.00, and profit was to be $16,593.00. B&W presented
evidence that it would have to spend an additional $13,407 ($43,407-$30,000) to
complete the project, thus entitling B&W to $7,593 ($60,000-$43,407-$9,000) in
profit. In addition, Wyatt testified that, had the Beckmans performed under the
contract, he would have made $7,593 in profit. We conclude that B&W presented
more than a scintilla of evidence of lost profits. (4) 

 We now turn to the Beckmans' arguments to determine whether legal
principles preclude B&W from recovering its lost profits. 

 The Beckmans contend that the trial court correctly granted JNOV because
"B&W's reliance upon the jury's 'excuse' finding bars its recovery of lost profits." 
The Beckmans rely on The Long Trusts v. Griffin, 222 S.W.3d 412 (Tex. 2006). 

 In Griffin, the Longs sued a gas company to enforce take-or-pay obligations in
a joint participation in oil and gas ventures. Id. at 415. In exchange for the Griffins'
sharing in litigation expenses, the Longs agreed to split any recovery in the suit with
the Griffins. Id. The agreement provided that the Longs would send out bills for
litigation expenses monthly. Id. In nearly three years, the Griffins received only a
few bills, but they paid them timely. Id. at 416. The Longs then submitted bills for
20 months of accumulated bills. Id. The Griffins agreed to pay a portion of the bills,
but the Longs rejected the agreement and "returned the Griffins' delinquent payments
and notified them that they had been excluded from further participating in the
litigation." Id. The Griffins made no more payments, but when the litigation settled
for $11.1 million, the Griffins sought their share. Id. 

 The supreme court stated that when the Longs ceased sending monthly bills the
Griffins could have sued to enforce the agreement, and, assuming that the Longs'
breach of their monthly billing obligation was material, the Griffins would have been
excused from any further obligation to perform. Id. at 415. The Griffins could also
have terminated the contract and sued the Longs for breach. Id. However, the
Griffins treated the agreement not as terminated but as continuing and entitling them
to the benefit of the bargain--participating in the recovery. Id. at 415-16. Thus they
deprived themselves of any excuse for ceasing performance on their own part. Id. 
The court held that "[t]he Griffins could not cease to share in the expenses and still
insist in sharing in the recovery." Id.

 Griffin is not applicable here because, unlike the Griffins, B&W did not treat
the contract as continuing, and the Beckmans do not point us to any evidence that
B&W believed that the contract was continuing. Rather, the evidence shows that
B&W believed that it had been fired from the job and stopped work on the
Beckmans' house. We thus conclude that Griffin does not preclude B&W from
recovering its lost profits. 

 The Beckmans next argue that the trial court correctly granted JNOV because
B&W did not account for expenses and costs and thus failed to present legally
sufficient evidence of its damages. The Beckmans rely on Fariss v. Smith Erectors,
Inc., 516 S.W.2d 281 (Tex. Civ. App.--Houston [1st Dist.] 1974, no writ). In Fariss,
the contractor was to be paid $30,000 for a construction job. Id. at 282. The
contractor sued after substantially performing the contract and claimed damages in
the amount of $18,000, which was the contract price less the sum of $12,000 that had
already been paid. Id.

 We stated that "[a] contractor who is unjustifiably prevented by the owner from
finishing his work may sue and recover as provided by the contract." Id. at 283. The
contractor's recovery "is measured by the difference between the contract price and
what it would have cost him to carry out the contract." Id. "Although he is entitled
to recover the profits which the contract would have yielded, he is not entitled to
receive, if he has only partially performed the contract, the same amount of money to
which he would have been entitled had it been fully executed." Id. We further stated
that "[t]he burden of proof is upon the contractor to provide the data from which such
damages may be computed." Id. Such proof consists of "evidence of the contract
price and proof of the probable cost to the plaintiff of completing performance. Id.
at 283-84. We concluded that the record in Farriss did not contain evidence from
which the trial court could ascertain the probable cost of completing the work and
therefore the court could not measure the contractor's profit. Id. There being no
evidence to support recovery beyond the amount already paid, no such recovery was
justified. Id. 

 The Beckmans misconstrue Farriss. Farriss supports our decision in this case
rather than undermining it. Farriss allows the recovery of lost profits, but it holds
that when there has been only partial performance, as here, the contractor cannot
recover the total amount of the contract (i.e. $60,000 minus the $30,000 already paid),
but only the additional profit (here, $7,593) the contractor would have gotten had the
breaching party performed under the contract. To recover the additional profit, he
must provide evidence from which the profit can be calculated. Unlike Farriss, the
record here contains evidence of the total contract price, the expenses B&W had
already incurred and the amount he had already been paid on the partially performed
contract, the amount of expenses B&W anticipated it would incur to finish the
contract, enabling the calculation of its anticipated profit. We thus conclude that
Farriss does not preclude B&W from recovering its lost profits.

 The Beckmans next argue that B&W cannot recover because it failed to comply
with the Texas Residential Construction Commission Act (RCCA), which requires
B&W to register as a builder. Because B&W did not register, the Beckmans assert
that it cannot seek a civil remedy for the Beckmans' breach of contract. 

 After the close of the evidence, the Beckmans argued to the trial court that
there could be no causation because B&W was not licensed by the Texas Residential
Construction Commission. However, the Beckmans did not raise the issue of B&W's
failure to register as a builder as a bar to its right to assert a civil remedy for breach
of contract by a private party in their motion for JNOV. The Beckmans' argument at
trial differs from the one they assert on appeal. We thus conclude the issue has been
waived. See Tex. R. App. P. 33.1. 

 We sustain B&W's second issue.

Attorney's Fees

 In its third issue, B&W argues that evidence supported the jury's finding that
B&W was entitled to reasonable and necessary attorney's fees. On appeal, the
Beckmans do not respond to B&W's arguments regarding their entitlement to
attorney's fees. 

 Jury question number eight asked the jury to award reasonable attorney's fees
to B&W. The jury awarded attorney's fees in the amount of $25,000 for preparation
and trial; $12,500 for an appeal to the Court of Appeal; and $10,000 for an appeal to
the Supreme Court of Texas. In its final judgment, the trial court stated that it was
disregarding the jury's answer to question number eight.

 B&W's attorney testified at trial and submitted an affidavit stating that he
believed reasonable attorney's fees in the case through trial were $25,000 and
reasonable appellate attorney's fees were $12,500. B&W's evidence on attorney's
fees was uncontroverted. Clear, direct, and uncontroverted evidence of attorney's
fees is taken as true as a matter of law, especially when the opposing party has the
means and opportunity to disprove the testimony. See Ragsdale v. Progressive Voters
League, 801 S.W.2d 880, 882 (Tex. 1990). Because we have sustained B&W's first
and second issues on its breach of contract claim and damages, we conclude that
B&W is entitled to attorney's fees. (5) See Tex. Civ. Prac. & Rem. Code Ann. §
38.001(8) (Vernon 2008).

 We sustain B&W's third issue. 

Cross-Appeal


Excuse

 In their first issue on cross-appeal, the Beckmans argue that because the jury's
answer regarding B&W's "excuse" for its ceasing performance under the contract was
not supported by legally sufficient evidence, the trial court should have rendered
judgment in favor of the Beckmans against B&W on the basis of the jury's finding
of B&W's breach under Question No. 1.

 It is a fundamental principle of contract law that when one party to a contract
commits a material breach of that contract, the other party is discharged or excused
from further performance. Mustang Pipeline Co., Inc. v. Driver Pipeline Co., Inc.,
134 S.W.3d 195, 196 (Tex. 2004). Having held in B&W's first issue that the jury
could have reasonably concluded that the Beckmans breached the contract and that
B&W properly treated the contract as not continuing, (6) we conclude that legally
sufficient evidence supports the jury's finding on B&W's excuse.

 We overrule the Beckmans' first cross-point.

DTPA Claims

 In their second issue on cross-appeal, the Beckmans assert that the trial court
erred in refusing to submit their DTPA claim. At the close of the evidence, the
Beckmans asked that their DTPA jury question should be submitted in the jury
charge. The trial court granted a directed verdict on the Beckmans' DTPA claim. On
appeal, the Beckmans contend that "B&W made representations to the Beckmans
about having all appropriate registrations to undertake the Contract."

 In reviewing the grant or denial of a directed verdict, an appellate court follows
the standards for assessing the legal sufficiency of the evidence. City of Keller v.
Wilson, 168 S.W.3d 802, 809-28 (Tex. 2005). We must determine whether there is
any evidence of probative force to raise a fact issue on the question presented. 
Bostrom Seating, Inc. v. Crane Carrier Co., 140 S.W.3d 681, 684 (Tex. 2004). We
will credit the favorable evidence if reasonable jurors could and disregard the
contrary evidence unless reasonable jurors could not. City of Keller, 168 S.W.3d at
827. "A directed verdict is warranted when the evidence is such that no other verdict
can be rendered and the moving party is entitled, as a matter of law, to judgment."
Byrd v. Delasancha, 195 S.W.3d 834, 836 (Tex. App.--Dallas 2006, no pet.).

 To establish a DTPA claim, the Beckmans had to produce evidence: (1) that
they were consumers; (2) that B&W engaged in at least one of the laundry list items; 
(3) that the Beckmans detrimentally relied on the false, misleading, or deceptive act
or practice; and (4) that the false, misleading, or deceptive act or practice was a
producing cause of their injury. See Amstadt v. U.S. Brass Corp., 919 S.W.2d 644,
649 (Tex. 1996). The producing-cause-of-actual-damages element requires some
showing that the defendant's act or omission was a cause in fact of the plaintiff's
injury. See Helena Chem. Co. v. Wilkins, 47 S.W.3d 486, 502 (Tex. 2001). To
establish the producing-cause element, the plaintiff must show the defendant's action
was a substantial factor in bringing about the plaintiff's injury, without which the
injury would not have occurred. See Doe v. Boys Club of Greater Dallas, Inc., 907
S.W.2d 472, 478 (Tex. 1995).

 The Beckmans assert that "[t]here is likewise evidence to demonstrate that this
violation [the violation of not registering with the TRCCA] was a producing cause
of the Beckmans' damages, in that they relied upon B&W to perform its work timely,
properly and completely, and not to have their residence left in shambles." However,
the Beckmans present no citation to the record that demonstrates that B&W's alleged
misrepresentation about being registered with the TRCCA was a producing cause of
their damages. Furthermore, we fail to see how B&W's registration or failure to
register with the TRCCA had relevance to damages caused to the Beckmans. 
Accordingly, we conclude that the trial court properly granted a directed verdict on
the Beckmans' DTPA claim.

 We overrule the Beckmans' second cross-point.

Conclusion


 We reverse the judgment of the trial court. We render judgment on the jury's
findings that B&W recover from Lawrence and Diane Beckman lost profit damages
in the amount of $9,000, reasonable attorney's fees for preparation and trial in the
amount of $25,500, and appellate attorney's fees in the amount of $12,500.

 



 

 Evelyn V. Keyes

 Justice


Panel consists of Justices Jennings, Keyes, and Higley.
1. See Tex. Bus. & Com. Code Ann. §§ 17.41-.63 (Vernon 2002 & Supp. 2008).
2. See Tex. Prop. Code Ann. § 162.001-.033 (Vernon 2007) (entitled, "Construction
Payments, Loan Receipts, and Misapplication of Trust Funds").
3. On appeal, the Beckmans do not controvert any of B&W's arguments regarding the
trial court's decision to disregard question number three (the Beckmans' failure to
perform the contract). The Beckmans merely state that "there was no legally
sufficient evidence that the Beckmans breached the contract. Accordingly, the trial
court erred when it did not disregard the jury's answer to Question No. 3." 
4. Wyatt testified that he would make a 30% profit on the $60,000 contract. At various
points in his testimony, Wyatt testified that he wanted the jury to award him $9,000
which would have been the remaining profit on the project. At other points, Wyatt
asked the jury to award him $7,593 in lost profits. The jury generally has broad
discretion to award damages within the range of evidence presented at trial. Gulf
States Utilities, Co. v. Low, 79 S.W.3d 561, 566 (Tex. 2002). We conclude that the
jury's award of $9,000 was within the range of the evidence.
5. A person may recover reasonable attorney's fees from an individual or corporation,
in addition to the amount of a valid claim and costs if the claim is for an oral or
written contract and is pled. Tex. Civ. Prac. & Rem. Code Ann. § 38.001 (Vernon
2008).
6. "A party who elects to treat a contract as continuing deprives himself of any excuse
for ceasing performance on his own part." Hanks v. GAB Bus. Servs., Inc., 644
S.W.2d 707, 708 (Tex. 1982).