

NUMBER 13-12-00478-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

**PARKDALE SHOPPING CENTER,**        **Appellant,**

**v.**

**DOLGENCORP OF TEXAS, INC.,**        **Appellee.**

**On appeal from the County Court at Law No. 2 of
Nueces County, Texas.**

# MEMORANDUM OPINION

**Before Justices Rodriguez, Garza, and Perkes
Memorandum Opinion by Justice Garza**

In this commercial lease dispute, appellant Parkdale Shopping Center ("Parkdale") challenges the trial court's judgment in favor of appellee, Dolgencorp of Texas, Inc. ("Dolgencorp").[1] Parkdale challenges the sufficiency of the evidence

---

[1] Trial testimony established that Dolgencorp, a subsidiary of Dollar General Corporation,

supporting the jury's findings: (1) that it breached the early termination provision of its lease with Dolgencorp; and (2) awarding it no attorneys' fees. By an additional issue, Parkdale asserts that if this Court reverses the damages awarded to Dolgencorp, we should remand the issue of Dolgencorp's attorney's fees to the trial court for reconsideration. We affirm.

## I. BACKGROUND

Beginning in 1994, Dolgencorp leased commercial space from Brooks Shopping Centers, Inc. in a multi-building shopping center in Corpus Christi, Texas. The lease was amended several times over the years to extend the lease term. In 2005, Parkdale purchased the shopping center property and thereby assumed the lease with Dolgencorp. On May 25, 2007, Dolgencorp again extended its lease term for another five years, through August 31, 2012.

On June 6, 2007, approximately two weeks after Dolgencorp exercised its option to renew the lease, Richard Runde, a co-owner of Parkdale, emailed Melissa Heisse, Dolgencorp's lease renewal manager, stating that Parkdale planned to build a new shopping center, anchored by a Wal-Mart, on the property. To facilitate the renovation, Parkdale asked Dolgencorp to move its store to the "other end of the center." Runde described the renovation as "a potentially very positive event for your organization."

Dolgencorp responded that it was "not interested in being part of a Wal[-]Mart anchored center" because Wal-Mart's presence would "negative[ly] impact" the Dollar General store. In subsequent emails through August 2007, Dolgencorp offered to terminate the lease in exchange for a payment of $100,000 from Parkdale and ninety

operates all Dollar General stores in Texas. In this opinion, we refer to Dolgencorp's store then located at the Parkdale shopping center as "the Dollar General store."

2

days to conduct a close-out sale. Parkdale offered Dolgencorp $50,000 and sixty days to conduct a close-out sale in exchange for the right to terminate the lease before the lease term expired. Eventually, in December 2008, the parties entered into a "Fifth Amendment" to the lease, which provided, among other things, that Parkdale could terminate the lease at any time with sixty days' notice to Dolgencorp and payment to Dolgencorp of $350,000. The applicable section of the Fifth Amendment provided as follows:

> 2. Early Termination. Landlord and Tenant hereby amend the Lease to provide that Landlord may terminate the Lease upon at least sixty (60) days' notice to Tenant, subject to the following conditions: (i) if the date that falls sixty (60) days after Landlord delivers a notice of termination is between a November 15 and the immediately following January 31, unless Tenant otherwise agrees to the contrary, the date of termination shall be that January 31 (*e.g.*, if Landlord gives Tenant a sixty-day notice of termination on October 1, 2008, the Lease will terminate January 31, 2009 instead of November 29, 2008); (ii) Landlord will pay to Tenant, on the date Tenant actually vacates the demised premises, the sum of Three Hundred Fifty Thousand and No/100 Dollars ($350,000.00).

> Prior to the date the Lease terminates, Tenant shall continue to occupy the demised premises under all of the current terms and conditions, including without limitation, the payment of all rent and other charges thereunder. Furthermore, in the event that either (i) Landlord does not provide Tenant with a notice to vacate the demised as set forth herein, or (ii) Landlord does not pay Tenant the amount of $350,000 on the date Tenant actually vacates the Premises, the Lease shall continue in full force and effect as if no termination had occurred, and Tenant shall continue to occupy the demised premises pursuant to the terms thereof.

On June 22, 2009, a fire occurred at a section of the Parkdale center some distance away from the Dollar General store. The building where the Dollar General store was located did not sustain any fire damage. By letter dated July 13, 2009, twenty-one days after the fire, Parkdale terminated Dolgencorp's lease. On July 20, Dolgencorp responded to Parkdale's termination letter by noting that the lease's

3

casualty provision provided for early termination only in the event of damage to the "demised premises"—defined by the lease as Dolgencorp's leased space only—and because the Dollar General store was not damaged by the fire, the casualty provision did not provide Parkdale any right to early termination.[2]  Dolgencorp's letter noted, though, that the Fifth Amendment permitted early termination of the lease if Parkdale made a payment of $350,000 to Dolgencorp.  On July 21, 2009, Parkdale sent Dolgencorp a letter stating that it would not be able to "get [the] premises back into proper operating condition within the 60 days contemplated by the lease."  The letter stated that the lease was "terminated by the circumstances."

On August 4, 2009, Parkdale filed a declaratory judgment action, seeking a declaration that the casualty provision of the lease was applicable and the lease was terminated thereunder.  Dolgencorp filed counterclaims for breach of contract, constructive eviction, and breach of express warranty of quiet possession.  Dolgencorp also sought attorneys' fees.

Following a six-day trial, the jury:  (1) found Parkdale breached its agreement to pay Dolgencorp the $350,000 fee and awarded Dolgencorp $350,000 in damages; (2)

---

[2] The casualty provision, in Paragraph XIV of the lease, provided:

> XIV.  DAMAGE TO BUILDING.  If all or any portion of the demised premises shall be condemned by lawful authority as unsafe or unfit for use, or if they become partially or wholly destroyed or damaged by fire or other casualty such as to render them untenantable, this Lease shall, at the option of either party, terminate unless the demised premised can be repaired or restored within sixty (60) days.  During any such reconstruction period the Lease shall be continued but the rent shall be abated during the period of time while the premises cannot be occupied.  Any rental paid in advance and at the time unearned shall be refunded.  Should the demised premises be damaged but remain tenantable, Lessor shall immediately repair the damage, and there shall be an equitable abatement of rent during the period of repair or restoration.

"Demised premises" is defined elsewhere in the lease as the specific space leased to Dolgencorp.

found Parkdale breached its express warranty of quiet possession; (3) found Parkdale constructively evicted Dolgencorp; (4) awarded Dolgencorp $72,373.00 in lost profit damages as a result of Parkdale's breach of express warranty of quiet possession or constructive eviction; (5) awarded Dolgencorp $157,000.00 in attorneys' fees, plus additional contingent fees on appeal; and (6) awarded Parkdale zero in attorneys' fees. The trial court entered judgment in accordance with the jury's verdict, awarding Dolgencorp $350,000.00 plus pre- and post-judgment interest and $157,000.00 in attorneys' fees plus additional contingent attorneys' fees on appeal. The judgment awarded Parkdale zero attorneys' fees. The trial court denied Parkdale's motion for new trial, and this appeal followed.

## II. BREACH OF EARLY TERMINATION AGREEMENT

By its first issue, Parkdale challenges the legal and factual sufficiency of the evidence supporting the jury's finding that it breached its agreement to pay the $350,000.00 early termination fee.[3] Specifically, Parkdale argues that: (1) "only Parkdale could invoke the early termination clause; [and (2)] no early termination could occur unless and until Parkdale both gave the sixty-day notice to vacate and paid the termination fee." Therefore, according to Parkdale, because it neither gave Dolgencorp sixty days' notice nor paid the $350,000.00 early termination fee, "the original lease continued in effect, and the [early] termination clause did not apply."

### A. Standard of Review and Applicable Law

"When an appellant attacks the legal sufficiency of an adverse finding on an

---

[3] By a second conditional issue, Parkdale argues that, if we find in its favor on the breach issue and thereby reduce Dolgencorp's damage award, the issue of the amount of attorneys' fees awarded to Dolgencorp should be remanded to the trial court for reconsideration.

issue for which it did not have the burden of proof, the appellant must demonstrate that there is no evidence to support the adverse finding." *Editorial Cabellero, S.A. de C.V. v. Playboy Enters., Inc.* 359 S.W.3d 318, 328 (Tex. App.—Corpus Christi 2012, pet. denied) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005); *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983)). "Such a no-evidence challenge will be sustained only if: (1) there is a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact." *Id.* at 328–29 (citing *City of Keller*, 168 S.W.3d at 810; *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003) (quoting *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997))). "In conducting a legal sufficiency review, we review the evidence presented at trial in the light most favorable to the jury's verdict and indulge every reasonable inference that would support it, crediting favorable evidence if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not." *Id.* at 329. "The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *Id.* (quoting *City of Keller*, 168 S.W.3d at 827).

"In reviewing a factual-sufficiency challenge to a jury finding on an issue on which the appellant did not have the burden of proof, we consider and weigh all of the evidence and set aside the verdict only if the evidence that supports the jury finding is so weak as to make the verdict clearly wrong and manifestly unjust." *Id.* (citing *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam); *Ins. Network of Tex. v. Kloesel*,

6

266 S.W.3d 456, 469–70 (Tex. App.—Corpus Christi 2008, pet. denied); *Bay, Inc. v. Ramos*, 139 S.W.3d 322, 329 (Tex. App.—San Antonio 2004, pet. denied) (en banc)). We must examine both the evidence supporting and that contrary to the judgment. *Id.* Additionally, the jury is the sole judge of witnesses' credibility, and it may choose to believe one witness over another; a reviewing court may not impose its own opinion to the contrary. *Id.*

Dolgencorp had the burden to prove Parkdale breached the early-termination agreement.[4] The essential elements of a breach of contract claim are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained as a result of the breach. *B & W Supply, Inc. v. Beckman*, 305 S.W.3d 10, 16 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). Parkdale's issue challenges only the breach element.

## B. Discussion

Parkdale essentially argues that because it terminated the lease early, but provided Dolgencorp *less than* the required sixty days' notice, and because it failed to pay the $350,000 early-termination fee, it did not "invoke" the Fifth Amendment. In other words, Parkdale argues that, because it failed to comply with both of its obligations under the Fifth Amendment, it could not have invoked or breached the Fifth Amendment provisions. Thus, under Parkdale's strained argument, it could avoid its obligations to provide notice and pay the fee by simply not providing notice or paying the fee. We are not persuaded by Parkdale's circular argument.

---

[4] Question 1 asked the jury: "Did Parkdale fail to comply with the agreement by not paying the early termination fee?" The jury answered, "Yes."

In its petition for declaratory judgment and at trial, Parkdale argued that it did not terminate the lease under the Fifth Amendment, but rather, terminated the lease under the casualty provision in Paragraph XIV of the lease.

At trial, Jerry Jonathan Quick, a co-owner of Parkdale, testified that after the fire, "Dollar General's space was untenantable and could not be made tenantable in a 60-day time frame from the casualty." Clay Stephens, a real estate attorney for Dolgencorp, testified that the Dollar General store was not damaged by the fire. Tyler Budd, an electrician hired by Dolgencorp, testified that he examined the Dollar General store about a month after the fire and found no fire damage to the store. Budd testified that the fire did not damage the electrical service to the Dollar General store. After completing some minor repairs—unrelated to the fire—to the Dollar General store's electrical system, Budd successfully restored electrical service to the store, but only for a brief period. Shortly thereafter, electrical service to the Dollar General store was ordered to be turned off by the City of Corpus Christi's chief electrical inspector. William Sam McCord, an architect and expert witness for Dolgencorp, testified that the Dollar General store was not damaged by the fire and was "still tenantable" after the fire. McCord testified that the parking lot lights and site lighting for the shopping center were turned off because of fire damage to the electrical system. Norman Walters, an electrical inspector for the City of Corpus Christi, testified that he inspected the Dollar General store after the fire, found the electrical system to be undamaged, and authorized electrical service to be turned on to the store. Dolgencorp also admitted into evidence an email from Runde to Irma Caballero, Chief Economic Development officer for the City; in the email, Runde asked Caballero to tell AEP (the electrical service

8

provider) that it was not authorized to re-establish electrical service to the Dollar General store.

Although there was conflicting testimony regarding the restoration of electrical power to the shopping center, termination of the lease under the casualty provision would have been triggered by damage to the Dollar General store only, not by damage to the shopping center generally. Even if, as Parkdale argued, it was unsafe to reopen the Dollar General store without restoring electrical service to the parking lot lights, Parkdale did not establish that repairing the parking lot lights would take longer than sixty days. We conclude Parkdale did not show it was entitled to terminate the lease pursuant to the casualty provision.

The following evidence supports the jury's finding that Parkdale breached its agreement to pay the early-termination fee:

- It is undisputed that Parkdale did not pay the $350,000 early termination fee. Jerry Quick, a co-owner of Parkdale, testified that the provision was enforceable and that Parkdale would have paid the early termination fee if it had "unilaterally [made] the decision to terminate that lease . . . ." Quick stated that Parkdale terminated the lease under the casualty provision because the Dollar General store was untenantable and could not have been made tenantable within sixty days after the fire. He also testified that Parkdale did not have the $350,000 to pay Dolgencorp after the fire.

- By letter dated July 13, 2009, Parkdale terminated Dolgencorp's lease before the August 31, 2012 termination date.[5]

---

[5] The letter, signed by Runde and addressed to Elaine Messler, a lease compliance manager for Dolgencorp, states, "It is now clear that the repairs required to bring the shopping center back up to an

9

- By letter dated July 20, 2009, Stephens advised Runde that, because the Dollar General store was not damaged by fire, Parkdale's only right to terminate the lease early was pursuant to the terms of the the Fifth Amendment, which required Parkdale to pay the $350,000 early termination fee.

- Parkdale did not present evidence supporting its claim that the Dollar General store could not have been made tenantable within sixty days of the fire.

Based on this evidence, a reasonable jury could have concluded that the casualty provision was not applicable because Parkdale did not establish that it was impossible to make the Dollar General store tenantable within sixty days following the fire. Thus, the jury could have reasonably determined that Parkdale breached the early-termination provision by failing to pay the $350,000 early termination fee. We hold the evidence is legally and factually sufficient to support the jury's finding. Because we uphold the jury's finding, we need not address Parkdale's issue requesting reconsideration of Dolgencorp's attorneys' fees. We overrule Parkdale's first and second issues.

### III. ZERO ATTORNEYS' FEES

By its third issue, Parkdale contends the evidence is factually insufficient to support the jury's finding awarding it zero attorneys' fees. We disagree.

Parkdale sought a declaratory judgment regarding the rights of the parties under the lease. The Declaratory Judgments Act provides that "[i]n any proceeding under this

---

operable condition are far more extensive and will take far longer than we first thought. Accordingly, we have no choice but to terminate your lease." We note that the letter does not state that the necessary repairs would take longer than sixty days.

chapter, the court may award costs and reasonable and necessary attorney's fees as are equitable and just." Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (West 2008).

The determination of whether to award attorneys' fees at all is solely within the sound discretion of the trial court. *City of The Colony v. N. Tex. Mun. Water Dist.,* 272 S.W.3d 699, 754 (Tex. App.—Fort Worth 2008, pet. dism'd); *Hunt v. Baldwin,* 68 S.W.3d 117, 135 (Tex. App.—Houston [1st Dist.] 2001, no pet.). We can reverse the trial court's decision only if the complaining party shows a clear abuse of discretion. *City of The Colony,* 272 S.W.3d at 754. In reviewing a trial court's decision to not award attorneys' fees, we must examine whether the complaining party established not only that the fees sought are reasonable and necessary, but also that the award is equitable and just. *Id.* Although a trial court may, as here, submit a question to the jury on the amount of reasonable and necessary attorneys' fees, it retains the authority to award or deny attorneys' fees. *Id.* Whether attorneys' fees are equitable and just are matters of law, which come within the trial court's discretion. *Hunt,* 68 S.W.3d at 135. The court may conclude it is not equitable or just to award reasonable and necessary attorneys' fees. *Id.*

Parkdale's argument on appeal, in its entirety, is as follows:

A zero award for attorney's fees is proper only if the evidence: (1) failed to prove (a) that any attorney's services were provided; or (b) the value of the services provided; or (2) affirmatively showed that no attorney's services were needed or that any services provided were of no value. Here, billing records and testimony of Parkdale's attorney provided ample evidence to support an award of some amount of attorney fees.

Under the Texas Declaratory Judgment Act, the court has discretion to award either party its attorney fees. Parkdale sought a declaration of the rights of the parties in light of the damage to the property. With the zero finding, the trial court could not meaningfully

11

exercise its discretion to award attorney fees to Parkdale.  This constitutes reversible error. [Citations omitted].

Parkdale has failed to explain how the jury's zero finding is against the great weight and preponderance of the evidence.  It did not address or establish that the fees it sought were reasonable and necessary or equitable and just.  *See City of The Colony,* 272 S.W.3d at 754.  It argues only—without explanation—that the jury's zero finding somehow precluded the trial court from "meaningfully exercis[ing] its discretion."  We conclude that the evidence was sufficient to support the jury's zero finding.  *See Hunt,* 68 S.W.3d at 136.  We overrule Parkdale's third issue.

## IV. CONCLUSION

We affirm the trial court's judgment.

_____
DORI CONTRERAS GARZA,
Justice

Delivered and filed the
15th day of August, 2013.

12