**Opinion issued July 9, 2019**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-18-00168-CV

———————————

## DEAN SMITH, Appellant

## V.

## LYLE BITNER, Appellee

---

**On Appeal from the County Civil Court at Law No. 1**
**Harris County, Texas**
**Trial Court Case No. 1087120**

---

## MEMORANDUM OPINION

Appellee Lyle Bitner sued appellant Dean Smith for breach of contract. The case proceeded to a bench trial, but the trial court, acting sua sponte, rendered judgment against Smith before he was able to present any evidence or legal arguments in his defense. Because we conclude that the trial court's premature

pronouncement of the judgment against Smith violated Smith's due process rights, we reverse the judgment and remand this case for further proceedings.

## Background

Bitner Enterprises was formed on April 18, 2008, but it forfeited its status and became inactive on February 10, 2012. On September 8, 2015, Bitner and Smith entered into a contract providing for Bitner to make certain repairs to Smith's home. The document was written on letterhead that stated, "Bitner Enterprises, LLC," at the top despite Bitner Enterprises, LLC's forfeiture of its corporate status more than three years before the parties' agreement. The agreement was signed by both Bitner and Smith individually and set out the details for repairs to Smith's portico, estimating the cost, including labor, materials, and other expenses, to be $28,000. Smith made payments to Bitner totaling $7,500, and Bitner completed part of the work before their relationship broke down. The parties provide differing accounts of the reason for Bitner leaving the work unfinished, and they disagree about the nature and extent of the work provided by Bitner and the amount that is still due under the contract.

Bitner sued Smith for breach of contract, alleging that he had performed the agreed-upon work, but Smith "failed and refused to pay" under the contract and, therefore, Smith owed him $20,500 plus interest and attorney's fees. Smith filed a general denial, and he also pled several verified denials, asserting, in relevant part,

2

that Bitner was not entitled to recover in the capacity in which he sued; that the amount due claimed by Bitner was not just and true; and that conditions precedent had not been performed as required. Specifically, Smith denied that Bitner "ha[d] completely performed or provided the goods and services alleged." Smith also asserted counterclaims for violations of the Deceptive Trade Practices Act and the Debt Collection Act.

On February 6, 2018, the trial court held a pretrial hearing to address some of the issues raised by Smith, such as his special exceptions challenging the capacity in which Bitner had sued. The trial court signed an order stating, "After considering argument and evidence, the Court FINDS that [Bitner] is suing in his personal capacity despite the contract being on corporate letterhead, and, the Court therefore DENIES [Smith's] Special Exceptions and Motion to Abate."

Immediately after the hearing on the special exceptions, the case proceeded to a bench trial. Bitner testified that he entered into the agreement with Smith to repair eight columns in the portico of Smith's residence for $28,000. He testified that he and Smith had initially agreed that Smith would make a payment of $2,500 every two weeks as the work progressed. Smith did not make all of these payments; instead, he paid only $7,500. Bitner testified that he kept working because Smith promised he would pay "as soon as I got [the columns] jacked back down and got all the scaffolding moved off where the homeowners' association

wouldn't be on them." But once that was done, Smith told Bitner "he didn't need me no more, he would get somebody else to finish the job." In addition to his testimony, Bitner provided photographs demonstrating the progress of the work he had completed for Smith, and he further testified that he had completed approximately 80% of the contracted-for work before Smith decided to hire someone else. Bitner also introduced a copy of the check Smith wrote for one of the payments. The check was for $1,000, made payable to Lyle Bitner. Ultimately, Bitner asked the trial court for 80% of the total contract price, or $22,400, minus the $7,500 already paid.

Bitner acknowledged that "Bitner Enterprises, LLC," appeared at the top of the parties' agreement, and he testified that "Bitner Enterprises, LLC," was his company "at one time." He stated that he "quit doing the LLC in [2012]," and he stated that he had also done business under "Bitner Enterprises, a d/b/a."

Smith's counsel asked Bitner a series of questions regarding his business arrangements, the formation of the LLC, and whether Bitner believed that he personally and the LLC were, in fact, a single entity. Bitner's counsel objected, arguing that the trial court had already rejected counsel's arguments regarding Bitner's capacity to sue. Smith also introduced into evidence copies of the petition and amended petition that Bitner had filed in another court, attempting to recover the same debt as "Bitner Enterprises, LLC."

4

Smith's counsel cross-examined Bitner, asking whether he was fired from the job. Bitner answered, "After not getting paid I was, yeah." Smith's attorney asked Bitner questions regarding an apparent discrepancy between the amount sought in his demand for payment—the full $20,500 still allegedly owing under the contract—and what he sought at trial—$14,900, or 80% of the contract minus the amounts already paid.

The trial court expressed frustration with the length of the proceedings, as it had done on several previous occasions:

[trial court]: What do I have to do to get y'all to hurry up?

[Smith's counsel]: Dismiss the case, Your Honor. I mean, you asked what we would want, so—and otherwise, I have to ask the questions that establish whether or not he is entitled to the money that he's asked for and whether or not he is being truthful in his statement regarding that amount.

[trial court]: Judgment for plaintiff.

[Smith's counsel]: Your Honor, I haven't been able to present my case.

[trial court]: You are excused. Judgment for plaintiff. Court of Appeals is right there.

[Smith's counsel]: Your Honor, will there be an entry date?

[Bitner's counsel]: I have a proposed judgment here, Your Honor.

[trial court]: Let me see it.

[Smith's counsel]: Can Your Honor set out the—

5

[trial court]: You are excused, sir.

[Smith's counsel]: Your Honor, my client [still has] a case before this Court. If you will—

[trial court]: You are excused, sir.

[Smith's counsel]: Your Honor, if you are going to remove me, you will do so under contempt of court. I am going to stand here and represent my client.

[trial court]: Fine. Do I need my bailiff to—

. . . .

[Smith's counsel]: Your Honor, I would ask the Court to allow me to make offers of proof of the evidence I would have presented in my case-in-chief and in my defense.

[trial court]: Okay. Proceed. I asked both of you gentlemen to hurry . . . [a]nd I don't know what I can do to get you moving besides this. I have not signed the final judgment.

Smith's counsel then tendered a certificate of fact from the Secretary of State indicating that the certificate of formation for Bittner Enterprises, LLC, had been filed with the secretary of state on April 18, 2008, and that the current "entity status in Texas is forfeited existence. The entity became inactive on February 10, 2012." Smith also tendered, as an offer of proof, a notice from the Secretary of State indicating that Bitner Enterprises, LLC, had forfeited its charter under Texas Tax Code section 171.302 and that "the taxable entity has not revived its forfeited privileges within 120 days after the date that the privileges were forfeited." The offer of proof also included the invoices from Smith's attorney and the demand

6

letter sent to Smith on behalf of "Bitner Enterprises, LLC," seeking $20,500 as the amount still due and owing under the parties' agreement. Smith tendered multiple photographs of the partially completed work, copies from the "Bitner Enterprises, LLC," webpage, a copy from an internet site showing "Bitner Enterprises, LLC," as a general contractor in Conroe, Texas, and a copy of a poor review of "Bitner Enterprises" that had been posted online.

Smith's attorney also stated:

> [H]ad Mr. Smith been able to present his defense in this case, Mr. Smith would have testified to the fact that Mr. Bitner did not, in fact, complete 80 percent of the work, that he did not—that he did not complete 25 percent of the work. Mr. Smith would testify to the fact that Mr. Bitner held out that he was operating as Bitner Enterprises, LLC, and that he fraudulently held himself out as an LLC or that he was an LLC and is now fraudulently purporting that he is not an LLC.
>
> We would have shown through the exhibits that that company had forfeited its existence but continued to operate. We would have shown that through the exhibits which establish that his website with that company are still up. We would have established that—Mr. Smith would have testified to the fact that Mr. Bitner has received all of the money owed for the work that he believes that he has completed.
>
> And . . . Mr. Smith would have testified to the fact that Mr. Bitner—he believed—I believe that he would have testified that Mr. Bitner had misrepresented to this Court and another Court the nature of the debt which he seeks to recover in this suit. . . .

The trial court stated, "I have your documents—I have your exhibits, sir. I've heard your statements. I'm taking this under advisement."

On February 9, 2018, the trial court signed its final judgment in this case, awarding Bitner $14,900 as the amount due and owing under the parties'

7

agreement, plus pre- and post-judgment interest and attorney's fees. This appeal followed.

## Due Process

In his third issue, Smith complains that the trial court deprived him of due process by rendering judgment against him before Bitner had rested his case and before Smith, the defendant, was able to present any evidence or legal argument in his defense. We agree.

The Texas Constitution guarantees due process rights by providing that "[n]o citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land." TEX. CONST. art. I, § 19; *see Perry v. Del Rio*, 67 S.W.3d 85, 92 (Tex. 2001). The Texas Supreme Court has recognized that this due course of law provision "at a minimum requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner." *Perry*, 67 S.W.3d at 92. The supreme court has further recognized that, "under certain circumstances, the right to be heard assures a full hearing before a court having jurisdiction over the matter, the right to introduce evidence at a meaningful time and in a meaningful manner, and the right to judicial findings based upon that evidence." *Id.* The right to due process "also includes an opportunity to cross-examine witnesses, to produce

8

witnesses, and to be heard on questions of law" and "the right to have judgment rendered only after trial." *Id.*

Here, the record demonstrates that the trial court began a bench trial. The plaintiff, Bitner, testified as the first witness on his own behalf. During Smith's cross-examination of Bitner, the trial court sua sponte pronounced judgment in favor of Bitner and against Smith, refusing to allow Smith to present any evidence in his defense. In doing so, the trial court deprived Smith of his right to complete his cross-examination of Bitner, deprived Smith of his right to produce witnesses and evidence of his own, and deprived him of the right to be heard on the issues that were before the Court. *See id.*; *see also* TEX. R. CIV. P. 262, 265 (setting out order of proceedings for trials); *see also Tana Oil & Gas Corp. v. McCall*, 104 S.W.3d 80, 82 (Tex. 2003) ("Ordinarily, a directed verdict should not be granted against a party before the party has had a full opportunity to present its case and has rested.").

Furthermore, Smith was harmed by the trial court's premature ruling. *See* TEX. R. APP. P. 44.1(a) (providing that error is reversible if it "probably prevented the appellant from properly presenting the case to the court of appeals"). In his offer of proof, Smith indicated that he was prevented from putting on evidence establishing the extent and nature of the work done by Bitner. This evidence was relevant to whether Bitner could establish the performance and damages elements

of his breach of contract claim, and, if so, in what amount. *See B & W Supply, Inc. v. Beckman*, 305 S.W.3d 10, 16 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (providing that essential elements of breach contract claim are: (1) existence of valid contract between plaintiff and defendant; (2) performance or tendered performance by plaintiff; (3) breach by defendant; and (4) damages sustained as result of breach). Smith also testified that he would have presented evidence regarding the nature of the parties' agreement, including the identity of the proper parties to the agreement.

The record demonstrates that there were questions of fact that had to be resolved, and, therefore, Bitner, the prevailing party, was not entitled to judgment as a matter of law. *Cf. McCall*, 104 S.W.3d at 82 (holding that grant of directed verdict against plaintiffs before they had rested was harmless error because plaintiffs' claims failed as matter of law: "the [plaintiffs] were not harmed by the trial court's irregular procedure because their action for tortious interference failed not for want of evidence but because proof of all their claims would not have entitled them to the only damages they sought"); *Deutsch v. Hoover, Bax & Slovacek, L.L.P.*, 97 S.W.3d 179, 195–96 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (holding that trial court may render sua sponte directed verdict as long as prevailing party below was entitled to judgment as matter of law).

We sustain Smith's third issue.

We further conclude that Smith's first and second issues would not afford him any greater relief than the remand required by the due process error. *See* TEX. R. APP. P. 47.1 (providing that appellate court must hand down written opinion addressing every issue raised and necessary to final disposition of appeal). In his first issue, Smith argues that he was entitled to dismissal of Bitner's suit because Bitner was not personally a party to the contract, and, in his second issue, Smith asserts that Bitner lacked capacity to sue as an individual interested in the contract. Smith frames these as issues warranting dismissal in his favor as a matter of law. The live pleadings, however, indicate that Bitner sued in his individual capacity, and the trial so found in a pretrial ruling. *See, e.g.*, TEX. R. CIV. P. 28 (providing that individual doing business under assumed name may sue or be sued in its assumed name for purpose of enforcing for or against it a substantive right, but true name may be substituted on motion by party or court); *cf. Chilkewitz v. Hyson*, 22 S.W.3d 825, 828–29 (Tex. 1999) (plaintiff may bring suit against individual doing business under corporate name even if corporation does not exist). Whether Bitner individually can establish the elements of his breach of contract claim is a question that must still be answered after a full hearing on that issue. Resolution of both of Smith's remaining issues would require determinations regarding the facts in this

case. As set out above, the trial court's premature ruling in Bitner's favor precluded Smith from fully presenting his case.[1]

Because Smith was unable to present evidence and legal arguments relevant to his claims, he is entitled to have the case remanded to the trial court for further proceedings.

## Conclusion

We reverse the judgment of the trial court and remand this case for further proceedings consistent with this opinion.


Richard Hightower
Justice

Panel consists of Chief Justice Radack and Justices Higley and Hightower.

---

[1] Because of the trial court's ruling, Smith is unable to show that the legal principles he relies upon in his brief are applicable here. He cites, for example, *Robertson v. Bland*, in which this Court reversed a judgment against the defendant Robertson individually based on its conclusion that the corporate defendant was the contracting party and Robertson merely signed the agreement in his representative capacity. 517 S.W.2d 676, 677–78, 680 (Tex. App.—Houston [1st Dist.] 1974, writ dism'd). Although the name "Bitner Enterprises, LLC," was printed at the top of the contract, the trial evidence demonstrated that no such corporation existed as a legal entity at the time the parties entered into their agreement. Therefore, there is, at this time, no evidence that Bitner was acting in a representative capacity rather than as a sole proprietor.